**UNITED STATES of America,**
**Libellant,**

v.

**ONE CARTON POSITIVE MOTION PICTURE FILM ENTITLED "491" (35 mm. Black & White, 5 Double Reels, 9610 feet, Swedish Soundtrack with English Subtitles), Janus Films, Inc., Claimant.**

United States District Court
S. D. New York.

Aug. 5, 1965.

See also D.C., 247 F.Supp. 450.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, for libellant, Arthur S. Olick, Asst. U. S. Atty., of counsel.

Brennan, London & Buttenwieser, New York City, for claimant, Ephraim London, New York City, of counsel.

McLEAN, District Judge.

This is an action pursuant to 19 U.S.C. § 1305 to forfeit and confiscate a motion picture made in Sweden which was seized by the customs authorities after its arrival in this country on the ground that it is obscene. The claimant, the importer of the film, moves for summary judgment.

Claimant first contends that the film is not obscene. In a series of recent decisions, the Supreme Court has defined that word. It has held that to be obscene a book, picture or film must be

(1) utterly without social significance; (2) patently offensive; and (3) it must deal with sex in a manner appealing to prurient interest.

> Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)
>
> Manual Enterprises v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.E.2d 639 (1962)
>
> Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964)

As to the third factor, the test is:

> " * * * whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."
>
> Roth v. United States, 354 U.S. at 489, 77 S.Ct. at 1311.

The film was exhibited to me. It is a thoroughly nasty work. Sordid and brutal from beginning to end, it is highlighted by scenes of homosexuality, rape, prostitution and sodomy. If it has any social significance, as claimant says it has, that significance can only be the author's thesis that human beings are vile. I incline to the view that even this dreary message is merely a sham, and that it is the pornography upon which the maker and the importer rely to sell the picture. If this film were distributed commercially throughout the United States, as claimant says it desires to do, whether or not its showing is restricted to adults, it would, in my opinion, be an affront to the inherent decency of the American public.

▆▆ Whether or not the film is obscene is a question of fact. Claimant asks me to hold as a matter of law that no reasonable trier of the fact could find this film to be obscene. This contention seems to me to be without merit. I believe that a reasonable trier of the fact could find this film to be obscene. Whether it is so found or not must await decision at the trial.

Very recently, the Court of Appeals has held in a criminal prosecution for mailing obscene pictures that the government does not make out a prima facie case sufficient to get to the jury merely by introducing the pictures themselves. Some further evidence is necessary to show that the pictures appeal to a prurient interest.

> United States v. Klaw, 350 F.2d 155 (2d Cir., July 15, 1965)

▆▆ Whether this rule applies to a condemnation proceeding such as this, the Court of Appeals had no occasion to decide. Even if it does, however, it has been complied with here, for in opposition to this motion the government has submitted affidavits from two customs officials who have had years of experience in screening obscene films and should be in a position to give expert opinion as to whether or not a film is obscene. In their opinion, this film is. These affidavits are sufficient to raise a question of fact. Moreover, more expert testimony may be adduced at the trial, subject to the test of cross-examination. Where expert testimony is necessary to resolve an issue of fact, summary judgment is inappropriate.

> Cf. Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Company, Inc., 260 F.2d 637 (2d Cir. 1958)

As far as the issue of obscenity goes, therefore, claimant is not entitled to summary judgment.

▆▆ Claimant next contends that 19 U.S.C. § 1305 is unconstitutional. That section provides, in pertinent part, that "All persons are prohibited from importing into the United States from any foreign country * * * any obscene book * * * print, picture * * * or other representation * * *." It provides further that "No such articles * * * shall be admitted to entry" and that "all such articles * * * shall be subject to seizure and forfeiture as hereinafter provided * * *."

The statute goes on to provide that:

> "Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the collector to await the

judgment of the district court as hereinafter provided; and no protest shall be taken to the United States Customs Court from the decision of the collector. Upon the seizure of such boook or matter the collector shall transmit information thereof to the district attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the forfeiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.

In any such proceeding any party in interest may upon demand have the facts at issue determined by a jury and any party may have an appeal or the right of review as in the case of ordinary actions or suits."

Claimant says that the word "obscene" is too vague. I am not impressed by this contention. As heretofore pointed out, the Supreme Court has recently taken some pains to define this word as it appears in other statutes, federal and state. I see no reason why the word should have any different meaning in this statute, or why customs officials and this court in a proceeding under this statute should be unable to apply the Supreme Court's definition to the facts of the particular case. In Roth, the Supreme Court expressly held that the word obscene is not too vague and imprecise to violate due process (354 U.S. at 491–492, 77 S.Ct. 1304). That conclusion applies here.

■ ■ Claimant further attacks the constitutionality of Section 1305 on the ground that it provides for administrative "censorship" without adequate provision for judicial review, and because it does not afford procedural safeguards to assure that non-obscene matter will not be seized. On the first branch of this argument, claimant relies on Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), in which the Supreme Court invalidated a state film censorship statute. On the second branch of its argument, claimant relies upon a series of recent decisions in which the Supreme Court has struck down state statutes which attempted, in one way or another, to control the publication and sale of obscene material.

Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961)

Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963)

Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964)

The Supreme Court has not held 19 U.S.C. § 1305 unconstitutional.[1]

I am not persuaded that the Supreme Court's decisions with respect to state power in this field are necessarily determinative of the power of Congress to prevent the importation into this country of obscene books and pictures in the manner prescribed in Section 1305. Nor does it seem to me that this section can fairly be said to be a "censorship statute." The section does not empower the customs officials to censor films. It merely directs them to "seize" (which, I take it, means "take possession of") and "hold" such works "to await the judgment of the district court." To be sure, some initial determination by the customs officials is necessary as to which

1. On the contrary, Mr. Justice Brennan in Manual Enterprises v. Day, 370 U.S. 478, 514–516, 82 S.Ct. 1432, 1452 (1962), after discussing the legislative history of the statute, pointed out that in enacting it, Congress had "emphatically rebuffed" attempts to "revert from judicial to administrative determinations" with respect to imported obscene material.

works are to be held for such a judicial determination. But this is inevitable. The district court cannot reasonably be expected to view each and every one of the thousands of books and pictures and other works which are imported into the United States, most of which, after all, are innocuous. Some screening procedure must be set up. To put this responsibility upon the customs officials is appropriate and in fact it is hard to see how else it could be handled, as a practical matter. But it is the court which makes the ultimate determination. There is no "seizure" in a final sense unless the court so decides, after a trial by jury, if the claimant wants one. The "seizure" by the customs authorities is merely a temporary detention.

Years ago, in United States v. One Obscene Book Entitled "Married Love," 48 F.2d 821 (S.D.N.Y.1931), Judge Woolsey held Section 1305 constitutional as against the charge made here that it impinged on freedom of the press. He said (at 822):

"The first point with which I shall deal is as to the contention that the section of the Tariff Act under which this libel was brought, title 19, U.S.C., § 1305 (19 USCA § 1305), is unconstitutional as impinging on the right of the freedom of the press. I think there is nothing in this contention. The section does not involve the suppression of a book before it is published, but the exclusion of an already published book which is sought to be brought into the United States.

After a book is published, its lot in the world is like that of anything else. It must conform to the law and, if it does not, must be subject to the penalties involved in its failure to do so. Laws which are thus disciplinary of publications, whether involving exclusion from the mails or from this country, do not interfere with freedom of the press."

This characteristically forthright view of the problem of course takes no account of the subleties and refinements which have been explored at length in subsequent decisions in this area. But I agree with it. It applies just as much to foreign motion pictures as to foreign books. I will follow it unless and until it is overruled by higher authority. I am unwilling to hold that the recent decisions of the Supreme Court dealing with state statutes have impliedly overruled Judge Woolsey's decision or have impliedly held Section 1305 to be beyond the power of Congress.

Finally, claimant contends that even if the statute is constitutional on its face, nevertheless the customs officials in this instance applied it in an unconstitutional manner. This argument comes down to the claim that the customs officials waited too long before seizing the motion picture.

It is true that this film arrived in the United States on October 27, 1964, was entered under special bond, and reached the customs officials, whose duty it is to review incoming films, on October 30, 1964. The customs officials seized it sometime between April 8 and April 20, 1965. Claimant was notified of the seizure on April 20, the day on which Customs requested the United States Attorney to institute forfeiture proceedings. The libel in this action was filed on April 22.

The government contends, however, that this delay was due to the acts of claimant itself, who embarked upon correspondence with the customs officials, viewed the film on at least two occasions, attempted to negotiate the admission of the film, and actually sent back to Sweden, without permission, a segment of the film which the customs officials had permitted claimant to cut out. Considerable time elapsed before this portion of the film was returned from Sweden to the customs authorities.

Customs officials cannot be expected to act immediately on every motion picture, any more than a court can be expected to decide on the day of argument every motion on a calendar of 200 motions. The volume is too great. Some

reasonable time to cope with the volume is inevitable. The time that elapsed here between the date of arrival and the date of seizure may have been unusually long, but in view of the acts of claimant which extended it, I cannot say as a matter of law that it was unreasonable.

Motion denied. So ordered.