James Ira HOSEY and ABC Mid-South Theatres, Inc., a Delaware Corporation, Plaintiffs,

v.

CITY OF JACKSON, MISSISSIPPI, a municipal corporation, Honorable Russell C. Davis, Mayor of the City of Jackson, Honorable James L. Spencer, Police Justice of the City of Jackson, Honorable Robert G. Nichols, Prosecuting Attorney for the City of Jackson, J. A. Chamblee and Joe Alford, Police Officers of the City of Jackson, Mississippi, Paul G. Alexander, County Attorney of Hinds County, Mississippi and Jack A. Travis, Jr., District Attorney of the Seventh District of the State of Mississippi, Defendants.

Civ. A. No. 4423.

United States District Court,
S. D. Mississippi,
Jackson Division,

Jan. 22, 1970.

Alex A. Alston, Jr., Jackson, Miss., for plaintiffs.

A. F. Summer, Atty. Gen., State of Mississippi, Jackson, Miss., Will S. Wells, Asst. Atty. Gen., Jackson, Miss., E. W. Stennett, Robert G. Nichols, Jr., John R. Countiss, III, Jackson, Miss., Thomas H. Watkins, Jackson, Miss., for defendants.

Before RIVES, Circuit Judge, and RUSSELL and NIXON, District Judges.

NIXON, District Judge:

Plaintiffs by this action seek to enjoin the enforcement of a Mississippi obscenity statute against the public showing of the motion picture film entitled "Candy". The statute in question, Section 2286, Mississippi Code Annotated,

Recompiled,[1] is alleged to be unconstitutional on its face or as applied. The plaintiffs thus request this three-judge court, properly convened and having jurisdiction over the subject matter herein,[2] to issue an Order permanently enjoining the defendants from further criminal prosecution, seizures or interferences in connection with the public showing of this film; the suppression of use and the return of one print of this film allegedly unlawfully seized and held by the defendants; a declaratory judgment as to their rights in this case; and a redress for damages.

On January 31, 1969, three police officers, Major John Chamblee, Detective Larry Fisher and Detective Joe Alford, purchased tickets at the Paramount Theater in Jackson, Mississippi and viewed the film "Candy" in its entirety. At the conclusion of this showing, the Manager, James I. Hosey, and the projectionist, Joe Kurgier, were arrested and the print of the film used in the showing was seized. There was no prior judicial hearing as to the obscenity of this film and the arrest and seizure were not made pursuant to any warrant. Subsequently, a general affidavit was signed against ABC Mid-South Theatres, Inc., a Delaware corporation licensed to do business in Mississippi, who was the exhibitor and licensee of the film. All of the plaintiffs herein were convicted in the Municipal Court of the City of Jackson for violating the Mississippi Statute and have appealed to the County Court of the First Judicial District of Hinds County, Mississippi. The parties have agreed to await this Court's ruling before proceeding further in the State Court.

The plaintiffs contend that the Mississippi statute under consideration is vague and overbroad and should therefore be declared invalid. The primary basis for this attack is the failure of the statute to include any definition of the word "obscene." The defendants contend, however, that the inclusion of an obscenity definition within the statute is unnecessary as the standards presently applicable, as enumerated by the Supreme Court, can and will be applied in any criminal prosecution thereunder.

The standard for obscenity, as defined in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), is: "Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to a prurient interest" in sex. A modification or perhaps a clarification of the obscenity definition began with Jacobellis v. Ohio, 378 U.S. 184, 191–192, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) and continued to the present tripartite test enumerated in Memoirs v. Massachusetts.[3] There Mr. Justice Brennan, in an opinion joined by then Chief Justice Warren and Mr. Justice Fortas, announced the following standard:

"* * * three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is

---

1. Mississippi Laws, 1920, ch. 213, Section 2286, Mississippi Code Annotated, Recompiled provides as follows: "It shall be unlawful for any person, firm or corporation, owning or operating any moving picture show or moving picture establishment, in this state, to show, or exhibit to public view on a screen or otherwise, any obscene, indecent, or immoral picture, drawing or print, provided such picture, drawing or print is not being exhibited under the auspices of health authorities for educational purposes. Any person, firm or corporation owning or operating any moving picture show or moving picture establishment in this state, violating this section shall be guilty of a misdemeanor and on conviction shall be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment for not more than sixty days or both."

2. 28 U.S.C.A. §§ 1331, 1343(3) (4) and 42 U.S.C.A. sec. 1983; 28 U.S.C.A. §§ 2281, 2284.

3. A Book Named "John Cleland's Memoirs of a Woman of Pleasure v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

In Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966) the Supreme Court modified the prurient appeal requirement of *Roth* to "social realities by permitting the appeal of this type of material to be assessed in terms of the sexual interest of its intended and probable recipient group * * *"

 It is thus evident that a precise definition of what actually constitutes obscenity has evolved through a long series of Supreme Court decisions, and to say the evolution is complete would certainly be an unfounded prognostication. The question before the Court is thus whether a criminal obscenity statute must incorporate by legislative act all present and necessarily future tests for obscenity as enunciated by the Supreme Court in order to be valid.

The answer to this query is in the negative. It is neither possible nor is it the function of a criminal statute to set out all the judicial tests for a proper determination of whether a violation of the statute has been committed All that is required is that the statute give adequate notice and warning of what is prohibited in order that one may avoid such conduct. This is done by the Mississippi statute under consideration.

 In Roth v. United States, *supra,* involving the validity of a Federal postal statute, and Alberts v. State of California, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed. 2d 1498 (1957), a companion case governed by the same decision and involving the validity of a California obscenity statute, the Supreme Court clearly sets forth the correct legal principles as follows:

"It is argued that the statutes do not provide reasonable ascertainable stand-ards of guilt and therefore violate the constitutional requirements of due process. Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840. The Federal obscenity statute makes punishable the mailing of material that is obscene, lewd, lascivious, or filthy * * * or other publications of an indecent character. The California statute makes punishable, *inter alia,* the keeping for sale or advertising material that is 'obscene or indecent.' The thrust of the argument is that these words are not sufficiently precise because they do not mean the same thing to all people, all the time, everywhere.

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process.

"* * * The Constitution does not require impossible standards; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.' United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877, [1883.] These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of '* * * the conduct proscribed and mark,' * * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * * Id. 332 U.S. at page 7, 67 S.Ct. at page 1542."

Thus in *Roth* and *Alberts* the Supreme Court held that statutes which did not define the word "obscene" were constitutional and then proceeded to define the

term as applicable to such statutes.[4] The definition established in *Roth* has evolved to the present tripartite standard applicable today under any obscenity statute. It is thus necessary to instruct a jury in any prosecution under an obscenity statute that in order for the state to prove its case the co-existence of the three necessary elements enunciated in *Memoirs* must be clearly established.

In the case of Great Speckled Bird of Atlanta Co-op. News Project v. Stynchcombe, 298 F.Supp. 1291, 1292 (N.D.Ga., 1969), the Court, in upholding an obscenity statute, the definition of which omitted the "patent offensiveness" and "redeeming social value" elements, states:

> "This element, as well as others formulated in other cases elaborating on *Roth*, supra, are grafted into the Georgia law by virtue of the supremacy of the Constitution of the United States and the binding effect of the decisions of the Supreme Court of the United States in interpreting the Constitution."

The Mississippi statute, unlike the statute upheld in *Great Speckled Bird, supra,* and in three recent cases from Kentucky, Louisiana and Alabama,[5] does not contain any elements of the presently applicable obscenity standard. As heretofore noted, the inclusion of any definition of the word "obscene" within the statute is unnecessary. This is the *Roth* rule. The definition of the word "obscene", as presently defined by the tripartite test of *Memoirs* and other decisions, is included within the Mississippi statute in light of the Supremacy of the United States Constitution and the binding effect of United States Supreme Court decisions interpreting that Constitution. In Morrison and Peachtree News Co., Inc. v. Ray Wilson et al., 307 F.Supp. 196 (N.D.Fla., 1969) [Dec. 5, 1969], a three-judge case, in upholding a Florida obscenity statute which, like the Mississippi statute, did not include a definition of the word "obscene", the Court stated:

> " * * * The elements, however, need not be specifically included in the statute. They become a part of it by virtue of the Constitution of the United States, and the binding force and effect of decisions of the United States Supreme Court interpreting that Constitution. The statute, if judicially interpreted and applied in light of Memoirs and these other decisions, is constitutional, and there is no reason to believe—indeed, there is every reason to believe otherwise—that the courts

4. In United States v. One Carton Positive Motion Picture Film Entitled "491", 248 F.Supp. 373 (D.C.N.Y.1965), the Court, in considering 19 U.S.C.A. Sec. 1305, states: "Claimant says that the word obscene is too vague. I am not impressed by this contention. As heretofore pointed out the Supreme Court has recently taken some pains to define this word as it appears in other statutes, federal and state. I see no reason why the word should have any different meaning in this statute, or why customs officials and this court in a proceeding under this statute should be unable to apply the Supreme Court's definition to the facts of the particular case * * *."

5. In Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky.1968), the three-judge panel interpreted *Memoirs* as not making additional requirements in listing three elements which must coalesce but merely explaining the *Roth* test. The Court found that it would be inconceivable for the Kentucky Courts to construe the statute as not including the "utterly without redeeming social value" element and the statute, in any event, could be "construed as supplying the requirement of absence of redeeming social value." In concurring with the holding in *Cambist*, a three-judge court upheld the validity of the Louisiana obscenity statute if judicially interpreted and applied in light of *Memoirs*. Delta Book Dist., Inc., v. Cronvich, 304 F.Supp. 662 (E.D.La.1969), [July 14, 1969]. Likewise, in Entertainment Ventures, Inc., v. Brewer et al., 306 F.Supp. 802 (M.D.Ala.1969) [Sept. 30, 1969] the Court upheld the validity of a 1961 Alabama obscenity statute. After a complete discussion of the above mentioned cases the court construed the statute to include all the elements enunciated in *Memoirs*. On the other hand, a three-judge court declared unconstitutional a Texas obscenity statute which failed to contain the "redeeming social value" element of *Memoirs*.

of Florida, in interpreting and applying it will not follow those decisions."

In 1923, long before *Roth* and its progeny, the Mississippi Supreme Court, in upholding the validity of a related statute, defined obscenity in a somewhat broader manner than the present tripartite test of *Memoirs, supra.*[6] The Mississippi Court has not again been faced with the question. This Court is of the opinion that a state court's definition of obscenity some thirty-four years before the Supreme Court actually entered the obscenity arena with the *Roth* decision, is no indication whatsoever that the Mississippi Courts would not, in interpreting and applying this statute today, follow the applicable Supreme Court decisions.

 The plaintiffs further contend that the statute is void in that it contains no requirement of scienter. This attack is derived from the Supreme Court's opinion in Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) involving the application of an obscenity ordinance to books for sale in a dealer's place of business. The Court's reasoning in invalidating this Ordinance is quite significant, the Court stating:

"* * * By dispensing with any requirement of knowledge of the contents of the book on the part of the seller, the ordinance tends to impose a severe limitation on the public's access to constitutionally protected matter. For if the bookseller is criminally liable without knowledge of the contents, * * * he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature. * * * If the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed. The bookseller's limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his absolute criminal liability, thus would tend to restrict the public's access to forms of the printed word which the state could not constitutionally suppress directly * * *."

Such reasoning simply does not apply to motion pictures. It would be impossible for a book dealer to familiarize himself with the contents of all the books he offers for sale, and proof of guilty knowledge would certainly be a condition precedent to conviction. The exhibitors of motion pictures, however, cannot seriously contend any lack of knowledge of the contents of a particular film. It is relatively easy and also the responsibility of film exhibitors to preview a motion picture before releasing it for public showing. The operation of this statute does not "tend in any manner to impose severe restrictions on the public's access to constitutionally protected matter." Smith v. California, *supra*. This Court is not impressed with the plaintiffs' claim of invalidity of this statute based on its failure to include a requirement of scienter.

 Finally, plaintiffs contend that the terminology used in the statute, "any obscene, indecent, or immoral picture * * *" can be construed to mean any frame or scene in a motion picture, and thus, renders the statute unconstitutional. This contention is without merit. This Court has determined that the obscenity standard enunciated in *Roth* and its progeny is incorporated into this Mississippi statute. The requirement that "the dominant theme of the material taken as a whole" be a criteria for any prosecution under this statute is without question. There is no evidence before this Court to indicate that the Mississippi trial court has or intends to apply this statute in a manner contrary to the *Roth* standard in the impending criminal prosecution. There has been no decision or statutory interpretation by the Mississippi Supreme Court to indicate that the statute could or should

6. Williams v. State, 130 Miss. 827, 94 So. 882 (1923).

be applied to a motion picture otherwise than as required by *Roth*. The mere allegation that the statute was incorrectly applied in a previous case involving a film entitled "The Fox", Cause Number 18,061 in the County Court of the First Judicial District of Hinds County, Mississippi, is not a sufficient reason to declare this statute unconstitutional.

The majority of this Court is thus of the opinion that Section 2286, Mississippi Code Annotated, Recompiled, is not unconstitutional on its face or as applied.

The arrest of plaintiffs and the seizure of the film "Candy" allegedly were undertaken in violation of the First, Fourth, and Fourteenth Amendments to the Constitution. Plaintiffs contend that there can be no seizure of allegedly obscene materials unless there has been a prior adversary hearing on the question of obscenity and that absent such procedure, the material so seized must be returned and its use as evidence suppressed in any criminal proceeding. On the other hand, defendants contend that the seizure of the film was made as an incident to lawful arrests without warrants for a crime committed in the presence of the arresting officers for the purpose of its use as evidence in subsequent criminal prosecutions, and thus complies fully with all constitutional requirements. As previously noted, no warrants were issued for the arrest of the plaintiffs and no search warrants were issued for the search and seizure of the film "Candy."

This Court is of the opinion that the seizure of an allegedly obscene film as an incident to lawful arrests for a crime committed in the presence of the arresting officers, i. e., the public showing of such film, does not exceed constitutional bounds in the absence of a prior judicial hearing on the question of its obscenity. There are, however, prior judicial pronouncements or guidelines with which compliance is an absolute prerequisite in order that this procedure be permissible and not violative of constitutional requirements.

The initial prerequisite is that the arrest itself be valid or lawful. The right of police officers to make an arrest without a warrant for a misdemeanor committed in their presence is well established under the laws of the State of Mississippi.[7] Such arrest, however, must be under the color of a statute which is not void or unconstitutional. The Mississippi statute prohibiting the public showing of an obscene movie[8] had not been declared unconstitutional by any court at the time of the arrest. Furthermore, this Court, by its opinion today, has determined that this statute, as written, meets all the necessary constitutional requirements.

The obscenity standard enunciated by *Roth* and its progeny requires that "the dominant theme of the material *taken as a whole* appeals to pru-

---

7. Section 2470. Mississippi Code 1942, (Chapter 355, Laws 1968) provides: "An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.

Any law enforcement officer may arrest any person on a misdemeanor charge without having a warrant in his possession when a warrant is in fact outstanding for that person's arrest and the officer has knowledge through official channels that the warrant is outstanding for that person's arrest. In all such cases, the officer making the arrest must inform such person at the time of the arrest the object and cause therefor. If the person arrested so requests, the warrant shall be shown to him as soon as practicable."

8. Section 2286, Mississippi Code of 1942.

rient interest." (Emphasis added.) It is therefore necessary that the arresting officers view the film in its entirety before the commission of this offense in their presence can be validly established. The viewing of only portions or isolated excerpts of the film is not sufficient. The record, and more specifically the affidavits of the three police officers involved, unquestionably reveal that these officers, as paying customers, viewed the film "Candy" in its entirety before an arrest or seizure was made, and that they did not leave their theater seats for any reason during the showing. It is thus clear that the elements necessary to constitute this offense were witnessed· by the officers and the arrests pursuant thereto were valid. See Cambist Films, Inc. v. Duggan, 298 F.Supp. 1148 (W.D. Pa.1969).

▮▮▮▮ It is well established that the fruits or instrumentalities constituting evidence of a criminal offense or articles which may be or may furnish the means to effectuate an escape are items subject to seizure by police officers upon making a valid arrest for an offense committed in their presence. Ker v. California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 10 L.Ed.2d 726, 743 (1963); Preston v. United States, 376

U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). The seizure of "mere evidence" as distinguished from fruits or instrumentalities of a crime is also permissible. Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 18 L.Ed.2d 782, 87 S.Ct. 1642 (1967); O'Neal v. United States, 411 F.2d 131 (C.A. 5, 1969).[9] The film "Candy" qualifies as a permissible object for seizure under all the circumstances of this case.[10]

▮▮▮▮ As the film is to be used as evidence of the criminal offense committed in the presence of the arresting officers, only one copy may be seized and retained.[11] The record reveals that the arresting officers seized one copy of the film "Candy", consisting of six reels, and this copy is being used in the state criminal prosecution of the plaintiffs herein.

The film itself is unquestionably the best evidence in any criminal prosecution for the public showing of an obscene movie. More importantly, however, it is a well known fact that moving picture films may be and often are altered by adding or deleting one or more scenes for showing at a particular theater or exhibition. The absolute necessity of retaining an exact content of the film as shown at the time of the commission

9. This Court is cognizant of the recent decision of Chimel v. State of California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), limiting the permissible bounds of search and seizure incident to a lawful arrest without first obtaining a search warrant. This limitation resulted from an over extension of the doctrine in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). The right and even the duty of police officers to seize the evidence which was the very means or vehicle of the commission of a crime committed in the officers' presence is not, in this Court's opinion, affected by the holding in Chimel. To prohibit the seizure of such evidence under these circumstances would completely frustrate criminal prosecution, and necessarily, the arrest for a crime witnessed by the arresting officers.

10. Cambist Films, Inc. v. Duggan, supra; See also Toscano v. Olesen, 184 F.Supp. 296 (S.D.Cal.1960); United States v. Lord, 184 F.Supp. 923 (S.D.N.Y.1960).

11. The right to retain one copy of the film as evidence should not be confused with the indiscriminate seizure of allegedly obscene books under the assumed authority of a search warrant. This procedure was condemned by the Supreme Court in Marcus v. Search Warrants, 367 U.S. 717, 730–731, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); A Quantity of Books v. Kansas, 378 U.S. 205, 211–212, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). Furthermore, it is obvious that allegedly obscene films do not qualify for seizure as contraband articles, such as narcotics or gambling paraphernalia, or in rem seizures as a clean-up measure. Marcus, supra.

of the alleged offense is obvious. The plaintiffs have failed to present one legitimate reason why an allegedly obscene film should not be seized and held as evidence of a criminal offense committed in the presence of the arresting officers.

This Court is of the opinion that any judicial hearing prior to the seizure of an allegedly obscene film at the time of exhibition would completely frustrate the purpose and operation of the Mississippi statute prohibiting the exhibition of obscene movies. Certainly, if a prior judicial hearing were required, it would be necessary for the hearing judge to view the film as exhibited on the occasion giving rise to the prosecution. To require a judge to proceed from one theater to another or attend numerous showings of a film at a particular theater with the mere possibility of viewing an obscene version is untenable. Furthermore, to require that the film be brought into Court or that arrangements be made for a private showing of the film in a particular theater provides no guarantees against the cutting or alteration of the film prior thereto. Finally, if police officers, after viewing an obscene film, were required to leave the theater in order to obtain a judicial determination on the question of obscenity by merely reporting the contents to the proper judicial officer, a judicial determination under such conditions would not only be extremely difficult and subject to error, but by the time a seizure could be made, the film might be altered or even shipped to another theater or location. This would be particularly true in so called "quickie movies" or "premiere performances," the same or any versions of which might never again be shown at the same location. A procedure which is not unreasonable and not oppressive should not be condemned so as to completely frustrate a state's legitimate right to prohibit the public showing of obscene movies.

The necessity of the seizure of an obscene movie at the time of showing cannot be compared to the seizure of obscene literature because books or magazines can always be purchased and brought before a court for a judicial hearing before a seizure is accomplished. Furthermore, literature does not enjoy the same possibility of easy deletion and alteration as is the case with a motion picture. Several movements of the cutter's hand can completely change the content of an exhibited obscene version of a movie and thereby eliminate any successful criminal prosecution.

This Court thus holds that the seizure as evidence of the film "Candy" by the arresting officers, having fully complied with the prerequisites herein enumerated, was not violative of any constitutional rights of the plaintiffs.

The plaintiffs seek an Order permanently enjoining the defendants from further criminal prosecution, seizures of or interferences with, the public showing of the film "Candy." A federal court will normally refrain from interfering in pending state criminal prosecutions. Congress has expressly declared the policy to be followed by all United States Courts in this regard by the enactment of 28 U.S.C.A. sec. 2283, which provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." None of these exceptions are applicable in the case before this Court. The only exceptional circumstances under which an injunction would properly lie are those depicted in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), in which a denial of the legitimate exercise of First Amendment rights was involved. As noted in Sheridan v. Garrison, 415 F.2d 699, 709 (C.A. 5, 1969), *Dombrowski* and its progeny require the presence of two elements before an applicant is entitled to relief, namely: "(1) a bad-faith use of the state's legal machinery with the purpose of inhibiting the exercise of the right of free speech (or, alternatively, the existence of a statute unconstitu-

tional on its face affecting free speech) and (2) a probability of irreparable injury, which is established if there is a showing of a significant chilling effect on speech that cannot be avoided by state court adjudication. *Dombrowski v. Pfister, supra,* 380 U.S. at 485, 486, 489–490, 85 S.Ct. at 1120–1123; Cameron v. Johnson, 390 U.S. at 619–620, 88 S.Ct. at 1339–1340 [20 L.Ed.2d 182]; cf. Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444." Upon a proper showing of the special circumstances or necessary elements of *Dombrowski,* the plaintiffs would be entitled to injunctive relief.[12] The plaintiffs herein, however, have failed in their heavy burden of establishing the existence of these two elements in this case.

Initially, this Court has determined that the Mississippi obscenity statute, unlike the statute in *Dombrowski,* is not unconstitutional or void on its face. The arrest and subsequent criminal prosecution of the plaintiffs was under the color of a valid statute.

The plaintiffs have also been unable to demonstrate any bad faith on the part of the defendants in enforcing this statute. Unlike Dombrowski, there is not a shred of evidence before this Court to indicate that the actions of the defendants were commenced with motives of harassment or vexation, and without any hope of ultimate success. The record in this case establishes beyond any doubt that the defendants' motive was indeed legitimate law enforcement and their actions were not designed to deliberately interfere with any First Amendment rights of the plaintiffs.[13]

The seizure and subsequent use in criminal proceedings of one copy of the film "Candy" without a prior judicial hearing on the question of obscenity is the only action by the defendants of which the plaintiffs complain. This Court has determined that the Constitutional rights of the plaintiffs were not violated by this law enforcement procedure. This action by the defendants is certainly not evidence of any bad faith or conduct calculated to deprive the plaintiffs of any First Amendment freedoms. Nor have the plaintiffs shown any irreparable injury brought about by a "chilling effect on speech that cannot be avoided by state court adjudication." Dombrowski v. Pfister, *supra.* As stated

12. In *Dombrowski,* unlike the case before us in which criminal proceedings are already in progress, the state prosecution had not begun when the complaint was filed in Federal court. The Supreme Court has not actually determined whether section 2283, supra, acts as a bar to injunctive relief in meritorious *Dombrowski* cases in which prosecution has already begun in the state courts. Two recent Fifth Circuit cases, however, have held that 2283 is not jurisdictional but an enactment of the principle of comity and its prohibitions are overcome by a showing of *Dombrowski* circumstances, whatever the form of the state proceeding threatening the injury. See Machesky v. Bizzell, 414 F.2d 283 (C.A.5, 1969); Sheridan v. Garrison, *supra.* Although the lower courts in the various circuits are divided on this question, this Court would follow these decisions of the 5th Circuit Court of Appeals absent a direct ruling by the Supreme Court.

13. The following language of Mr. Justice Fortas in his opinion dissenting to denial of relief in *Cameron, supra,* illustrates the heavy burden of proof necessary for plaintiffs to attain relief and is cited with approval by the Fifth Circuit Court of Appeals in Sheridan v. Garrison, *supra*: "*Dombrowski* is strong medicine. It involves interposition of federal power at the threshold stage of the administration of state criminal law. *Dombrowski's* remedy is justified only when First Amendment rights, which are basic to our freedom, are imperiled by calculated, deliberate state assault. And those who seek federal intervention bear a heavy burden to show that the State, in prosecuting them, is not engaged in use of its police power for legitimate ends, but is deliberately invoking it to harass or suppress First Amendment rights. *Dombrowski* should never be invoked when the State is, in substance and truth, engaged in the enforcement of valid criminal laws. Ordinarily, the presumption that the State's motive was law enforcement and not interference with speech or assembly will carry the day." *Cameron, supra,* 390 U.S. at 623, 88 S.Ct. at 1342.

by the Court in McGrew et al. v. City of Jackson, Mississippi et al., 307 F.Supp. 754 (Dec. 31, 1969), a companion case to the case now under consideration by this Court:

"There is an absolute dearth of evidence before this Court: to show that plaintiffs are threatened with any injury other than that incidental to any criminal action brought in good faith to determine guilt or innocence; to show the existence of any substantial loss, or impairment of any First Amendment freedom awaiting state court disposition of the case and ultimate review on appeal; to show any imponderables or contingencies to exist which would inhibit the full exercise of First Amendment freedoms during criminal prosecutions." McGrew v. City of Jackson, 307 F.Supp. at page 760.

In the absence of any evidence of bad faith on the part of the defendants in enforcing the Mississippi obscenity statute or, alternately, the invalidity of the statute itself, and the complete failure of the defendants to show any irreparable injury resulting from a continuance of the criminal proceedings instituted against them in state court, the request for injunctive relief is denied.

Even though injunctive relief has been denied in this case, plaintiffs are entitled to a declaratory judgment of their rights where a statute is attacked as being unconstitutional for vagueness or overbroadness. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). In effect, the Court has already done this but, to summarize, the Mississippi obscenity statute attacked by plaintiffs in this suit is not unconstitutional for vagueness or overbreadth. In applying the statute, it is necessary that the co-existence of the three elements enunciated in *Memoirs* be clearly established.

The seizure of one copy of the film "Candy" which is being used as evidence in the criminal prosecution of the plaintiffs did not violate any constitutional requirements even though there was no prior adversary hearing on the question of obscenity and the suppression and return of this film is not required. This is most emphatically not a *Dombrowski* case entitling plaintiffs herein to any injunctive relief.

Finally, the plaintiffs have requested this Court to issue a declaratory judgment that the motion picture "Candy" is not obscene or otherwise in violation of any law. While the guilt or innocence of the plaintiff must be determined in the state courts pursuant to appropriate legal proceedings, this Court, having viewed the motion picture "Candy" in its entirety in order to ascertain all that a full-scale trial of this case on its merits would entail, is of the opinion that the film is devoid of any literary or artistic merit and presents nothing more than a vivid portrayal of hard core pornography. This film has no discernible theme or plot and involves a disconnected series of scenes depicting sexual gratification in a shocking and shameful manner. The Court certainly concurs with the observations of defendants' witness Dean John S. Jenkins,[14] who testified:

"The film is, in my opinion, a series of unrelated sequences in the life of this girl and each of the scenes builds up to the disrobing of the female and then the filming of various forms of sexual activity with her. In my opinion these scenes are clearly designed to arouse what we might consider normal, as well as abnormal, interest and emotions in sexual behavior." (Jenkins Dep. pp. 5–6)

The defendants categorize the film as a satire or a spoof on various aspects of

---

14. Dean Jenkins holds a Bachelor's Degree from Louisiana State University, a Masters Degree from the University of Chicago and a Bachelor of Divinity Degree from Seberry Western Theological Seminary in Evanston, Illinois. He has served as Headmaster and Rector of All Saints Episcopal School at Vicksburg, Mississippi, and for the past two years has been Dean of St. Andrews Episcopal Cathedral in Jackson, Mississippi.

modern life. Such a categorization, however, does not bring this obscene film within the constitutional protection of the First Amendment. The graphic portrayal of illicit, unnatural and incestuous sexual relationships[15] which dominate the entirety of this film leave little to the imagination and completely overpowers or minimizes the presence of any elements of satire.[16]

This motion picture is violative of the tridentated test as enunciated in *Memoirs, supra,* in that the dominant theme of the material in this film taken as a whole appeals to a prurient interest in sex, the material is patently offensive because it clearly affronts contemporary community standards relating to the representation of sexual matters, and the material is utterly without redeeming social value. All three of these elements coalesce when applied to the film "Candy." It is necessary for one to view the various lurid and bizarre activities depicted in this film and hear the sound effects incidental thereto in order to fully appreciate the obscene and disgusting nature of this motion picture in its entirety. Although this Court is of the opinion that the U.S. Supreme Court's 5 to 4 per curiam affirmance in Landau v. Fording, 388 U.S. 456, 87 S.Ct. 2109, 18 L.Ed.2d 1317 (1967), does not provide a sufficient foundation for the contention that a stricter standard should apply to motion pictures than to books, we cannot ignore the visual impact of a film as compared to the printed word. As noted by the California Court in Landau v. Fording, 1967, 245 Cal.App.2d 820, 54 Cal.Rptr. 177, 181, "Because of the nature of the medium, we think a motion picture of sexual scenes may transcend the constitutional guarantee long before a frank description of the same scenes in the written word."

In conclusion, it is the opinion of this Court that the request for a permanent injunction should be and is hereby denied. Likewise the request for suppression or return of the one copy of the film, "Candy", lawfully seized and held as evidence in this case, is denied. This action obviates the need for the intervention of a jury on any Seventh Amendment claim which necessarily falls with the Complaint.

The front cover of the book "Candy", and the book itself, heretofore marked for identification purposes are admitted and marked Defendants' Exhibits Number D–4 and D–5, respectively.

As this Court has denied all requested affirmative relief except the declaratory relief herein granted, the Complaint is finally dismissed at plaintiffs' cost. A judgment accordingly shall be presented within five days after this date under the Rules of this Court.

Any judge in the majority may sign the final order in this case on behalf of the majority and a notation of dissent shall be noted thereon.

RUSSELL, District Judge, concurs.

RIVES, Circuit Judge, dissents.

RIVES, Circuit Judge (dissenting):

For the reasons stated in my dissent in the companion case, McGrew et al. v. City of Jackson, Mississippi, et al., S.D. Miss.1969, 307 F.Supp. 754 and also in Entertainment Ventures v. Brewer et al., M.D.Ala.1969, 306 F.Supp. 802, I think that relief should be granted the plaintiffs both because the seizure of the film violated their First Amendment

---

15. The film depicts illicit sexual intercourse between Candy, an unmarried female, and a gardener, a photographer, a hunchback and a guru; unnatural sexual gratification between Candy and a doctor and between a drunken poet and a doll, mistaken for the girl; and the incestuous relationship of Candy with her father and uncle.

16. In discussing the attempted satire in the film Dean Jenkins stated: "A satire, in my opinion, to be successful has to be close enough to the realities of that which it is satirizing and then find a weakness in a way that is somewhat humorous. I don't think any of these scenes do that at all." (Jenkins Dep. p. 12.)

rights, and because the statute in question, Section 2286, Mississippi Code Annotated, Recompiled, on its face and as applied violates the First Amendment. I therefore respectfully dissent.