# ROADEN *v.* KENTUCKY

No. 71–1134.  Argued November 14, 1972—Decided June 25, 1973

BURGER, C. J., delivered the opinion of the Court, in which WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. BRENNAN, J., filed an opinion concurring in the judgment in which STEWART and MARSHALL, JJ., joined, *post*, p. 507. DOUGLAS, J., filed a dissenting opinion, *ante*, p. 494.

*Phillip K. Wicker* argued the cause and filed a brief for petitioner.

*Robert V. Bullock,* Assistant Attorney General of Kentucky, argued the cause for respondent.  With him on the brief was *Ed. W. Hancock,* Attorney General.*

---

*\*Charles H. Keating, Jr.,* filed a brief as *amicus curiae* urging affirmance.

Mr. Chief Justice Burger delivered the opinion of of the Court.

The question presented in this case is whether the seizure of allegedly obscene material, contemporaneous with and as an incident to an arrest for the public exhibition of such material in a commercial theater may be accomplished without a warrant.

On September 29, 1970, the sheriff of Pulaski County, Kentucky, accompanied by the district prosecutor, purchased tickets to a local drive-in theater. There the sheriff observed, in its entirety, a film called "Cindy and Donna" and concluded that it was obscene and that its exhibition was in violation of a state statute. A substantial part of the film was also observed by a deputy sheriff from a vantage point on the road outside the theater. Since the petitioner conceded the obscenity of the film at trial, that issue is not before us for decision.[1]

The sheriff, at the conclusion of the film, proceeded to the projection booth, where he arrested petitioner, the manager of the theater, on the charge of exhibiting an obscene film to the public contrary to Ky. Rev. Stat. § 436.101 (1973).[2] Concurrent with the arrest, the sheriff

---

[1] Petitioner's lawyer made the following statement to the trial jury during the closing arguments:

"I would be good enough to tell you at the outset that, in behalf of Mr. Roaden, I am not going to get up here and defend the film observed yesterday nor the revolting scenes in it or try to argue or persuade you that those scene[s] were not obscene." App. 37.

[2] Kentucky Revised Statutes § 436.101 (1973), reads in relevant part as follows:

"Obscene matter, distribution, penalties, destruction.

"(1) As used in this section:

"(a) 'Distribute' means to transfer possession of, whether with or without consideration.

"(b) 'Matter' means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or

seized one copy of the film for use as evidence. It is uncontested: (a) that the sheriff had no warrant when he made the arrest and seizure, (b) that there had been no

---

other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials.

"(c) 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters.

"(d) 'Person' means any individual, partnership, firm, association, corporation, or other legal entity.

"(2) Any person who, having knowledge of the obscenity thereof, sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is punishable by fine of not more than $1,000 plus five dollars ($5.00) for each additional unit of material coming within the provisions of this chapter, which is involved in the offense, not to exceed ten thousand dollars ($10,000), or by imprisonment in the county jail for not more than six (6) months plus one (1) day for each additional unit of material coming within the provisions of this chapter, and which is involved in the offense, such basic maximum and additional days not to exceed 360 days in the county jail, or by both such fine and imprisonment. If such person has previously been convicted of a violation of this subsection, he is punishable by fine of not more than $2,000 plus five dollars ($5.00) for each additional unit of material coming within the provisions of this chapter, which is involved in the offense, not to exceed $25,000, or by imprisonment in the county jail for not more than one (1) year, or by both such fine and such imprisonment. If a person has been twice convicted of a violation of this section, a violation of this subsection is punishable by imprisonment in the state penitentiary not exceeding five (5) years.

.        .        .        .        .

"(8) The jury, or the court, if a jury trial is waived, shall render a general verdict, and shall also render a special verdict as to whether the matter named in the charge is obscene. The special

prior determination by a judicial officer on the question of obscenity, and (c) that the arrest was based solely on the sheriff's observing the exhibition of the film.

On September 30, 1970, the day following the arrest of petitioner and the seizure of the film, the Grand Jury of Pulaski County heard testimony concerning the scenes and content of the film and returned an indictment charging petitioner with exhibiting an obscene film in violation of Ky. Rev. Stat. § 436.101. On October 3, 1970, petitioner entered a plea of not guilty in the Pulaski Circuit Court, and the case was set for trial. On October 12, 1970, petitioner filed a motion to suppress the film as evidence and to dismiss the indictment. The motion was predicated upon the ground that the film was "improperly, unlawfully and illegally seized, contrary to . . . the laws of the land." Four days later, on October 16, 1970, the Pulaski Circuit Court heard argument at an adversary hearing on petitioner's motion. The motion was denied.

Petitioner's trial began on October 20, 1970. The arresting sheriff and one of his deputies were the only witnesses for the prosecution. The sheriff testified that the film displayed nudity and "intimate love scenes." The sheriff further testified that, upon viewing the film, he determined that it was obscene and that its exhibition

---

verdict or findings on the issue of obscenity may be: 'We find the . . . (title or description of matter) to be obscene,' or, 'We find the . . . (title or description of matter) not to be obscene,' as they may find each item is or is not obscene.

"(9) Upon the conviction of the accused, the court may, when the conviction becomes final, order any matter or advertisement, in respect whereof the accused stands convicted, and which remains in the possession or under the control of the attorney general, commonwealth's attorney, county attorney, city attorney or their authorized assistants, or any law enforcement agency, to be destroyed, and the court may cause to be destroyed any such material in its possession or under its control."

violated state law. He therefore arrested petitioner. Together with the testimony of the sheriff, the film itself was introduced in evidence. Petitioner's motion to suppress the film was renewed, and again overruled. The sheriff's deputy took the stand and testified that he had viewed the final 30 minutes of the film from a vantage point on a public road outside the theater. Following this testimony, the jury was permitted to see the film.

Petitioner testified in his own behalf. He stated that, to his knowledge, no juveniles had been admitted to see the film, and that he had received no complaints about the film until it was seized by the sheriff. At the close of his testimony, the jury found petitioner guilty as charged. The jury rendered both a general verdict of guilty and a special verdict that the film was obscene, as provided by Ky. Rev. Stat. § 436.101 (8).

On appeal, the Court of Appeals of Kentucky affirmed petitioner's conviction. The Court of Appeals first emphasized that "[i]t was conceded by [petitioner's] counsel in closing argument to the jury that the film is obscene. No issue is presented on appeal as to the obscenity of the material." 473 S. W. 2d 814, 815 (1971). The Court of Appeals then held that the film was properly seized incident to a lawful arrest, distinguishing the holdings of this Court in *A Quantity of Books* v. *Kansas,* 378 U. S. 205 (1964), and *Marcus* v. *Search Warrant,* 367 U. S. 717 (1961), on the ground that those decisions related to seizure of allegedly obscene materials "for destruction or suppression, not to seizures incident to an arrest for possessing, selling, or exhibiting a specific item." 473 S. W. 2d, at 815. It also distinguished *Lee Art Theatre* v. *Virginia,* 392 U. S. 636 (1968), on the grounds that there film "had been seized pursuant to a [defective] search warrant, not incident to an arrest." 473 S. W. 2d, at 816. The Court of Appeals relied on a decision of a federal three-judge

court in *Hosey v. City of Jackson,* 309 F. Supp. 527 (SD Miss. 1970), which concluded that:

> "[S]eizure of an allegedly obscene film as an incident to lawful arrests for a crime committed in the presence of the arresting officers, i. e., the public showing of such film, does not exceed constitutional bounds in the absence of a prior judicial hearing on the question of its obscenity." *Id.,* at 533.

The Court of Appeals specifically declined to follow a decision by another federal three-judge court in *Ledesma v. Perez,* 304 F. Supp. 662 (ED La. 1969), which held unconstitutional the seizure of allegedly obscene material incident to an arrest, but without a warrant or a prior adversary hearing.[3]

## I

The Fourth Amendment proscription against "unreasonable . . . seizures," applicable to the States through the Fourteenth Amendment, must not be read in a vacuum. A seizure reasonable as to one type of material in one setting may be unreasonable in a different setting or with respect to another kind of material. Cf. *Coolidge v. New Hampshire,* 403 U. S. 443, 471–472 (1971); *id.,* at 509–510 (Black, J., concurring and dissenting); *id.,* at 512–513 (WHITE, J., concurring and dissenting). The question to be resolved is whether the seizure of the film without a warrant was unreasonable under Fourth Amendment standards and, if so,

---

[3] We vacated the judgment in *Hosey v. City of Jackson,* 309 F. Supp. 527 (SD Miss. 1970), on the grounds of the Court's policy of noninterference in state prosecution; we did not reach the merits. *Hosey v. City of Jackson,* 401 U. S. 987 (1971). We also vacated the judgment in *Ledesma v. Perez,* 304 F. Supp. 662 (ED La. 1969), again on the grounds of noninterference with state criminal proceedings prior to adjudications by state courts. *Perez v. Ledesma,* 401 U. S. 82 (1971).

whether the film was therefore inadmissible at the trial. The seizure of instruments of a crime, such as a pistol or a knife, or "contraband or stolen goods or objects dangerous in themselves," *id.*, at 472, are to be distinguished from quantities of books and movie films when a court appraises the reasonableness of the seizure under Fourth or Fourteenth Amendment standards.

*Marcus* v. *Search Warrant, supra,* held that a warrant for the seizure of allegedly obscene books could not be issued on the conclusory opinion of a police officer that the books sought to be seized were obscene. Such a warrant lacked the safeguards demanded "to assure nonobscene material the constitutional protection to which it is entitled. . . . [T]he warrants issued on the strength of the conclusory assertions of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene." 367 U. S., at 731–732. There had been "no step in the procedure before seizure designed to focus searchingly on the question of obscenity." *Id.*, at 732.

The sense of this holding was reaffirmed in *A Quantity of Books* v. *Kansas, supra,* where the Court found unconstitutional a "massive seizure" of books from a commercial bookstore for the purpose of destroying the books as contraband. The result was premised on the lack of an adversary hearing prior to seizure, and the Court did not find it necessary to reach the claim that the seizure violated Fourth Amendment standards. 378 U. S., at 210 n. 2. However, the Court emphasized:

> "It is no answer to say that obscene books are contraband, and that consequently the standards governing searches and seizures of allegedly obscene books should not differ from those applied with respect to narcotics, gambling paraphernalia and

other contraband. We rejected that proposition in *Marcus.*" *Id.,* at 211–212.

*Lee Art Theatre* v. *Virginia, supra,* was to the same effect with regard to seizure of a film from a commercial theater regularly open to the public. There a warrant for the seizure of the film was issued on the basis of a police officer's affidavit giving the titles of the film and asserting in conclusory fashion that he had personally viewed the films and considered them obscene. The films were seized pursuant to the warrant and introduced into evidence in a criminal case against the exhibitor. Conviction ensued. On review, the Court held that "[t]he admission of the films in evidence requires reversal of petitioner's conviction" because

> "[t]he procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusions was not a procedure 'designed to focus searchingly on the question of obscenity,' *id.,* [*Marcus* v. *Search Warrant, supra*] at 732, and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression." 392 U. S., at 637.

No mention was made in the brief *per curiam Lee Art Theatre* opinion as to whether or not the seizure was incident to an arrest. The Court relied on *Marcus* and *A Quantity of Books.*

The common thread of *Marcus, A Quantity of Books,* and *Lee Art Theatre* is to be found in the nature of the materials seized and the setting in which they were taken. See *Stanford* v. *Texas,* 379 U. S. 476, 486 (1965).[4]

---

[4] In *Stanford* v. *Texas, supra,* we acknowledged the difference between books and weapons, narcotics, or cases of whiskey.

In each case the material seized fell arguably within First Amendment protection, and the taking brought to an abrupt halt an orderly and presumptively legitimate distribution or exhibition.   Seizing a film then being exhibited to the general public presents essentially the same restraint on expression as the seizure of all the books in a bookstore.   Such precipitate action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards.   The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness.   The setting of the bookstore or the commercial theater, each presumptively under the protection of the First Amendment, invokes such Fourth Amendment warrant requirements because we examine what is "unreasonable" in the light of the values of freedom of expression.[5]   As we stated in *Stanford* v. *Texas, supra:*

> "In short, . . . the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude when the 'things' are books, and the basis for their seizure is the ideas which they contain. See *Marcus* v. *Search Warrant,* 367 U. S. 717; *A Quantity of Books* v. *Kansas,* 378 U. S. 205.   No less a standard could be faithful to First Amendment freedoms.   The constitutional impossibility of leav-

---

[5] This does not mean an adversary proceeding is needed before seizure, since a warrant may be issued *ex parte.   Heller* v. *New York, ante,* p. 483.

ing the protection of those freedoms to the whim of the officers charged with executing the warrant is dramatically underscored by what the officers saw fit to seize under the warrant in this case." 379 U. S., at 485 (footnotes omitted).

Moreover, ordinary human experience should teach that the seizure of a movie film from a commercial theater with regularly scheduled performances, where a film is being played and replayed to paid audiences, presents a very different situation from that in which contraband is changing hands or where a robbery or assault is being perpetrated. In the latter settings, the probable cause for an arrest might justify the seizure of weapons, or other evidence or instruments of crime, without a warrant. Cf. *Chimel* v. *California,* 395 U. S. 752, 764 (1969); *id.,* at 773–774 (WHITE, J., dissenting); *Preston* v. *United States,* 376 U. S. 364, 367 (1964). Where there are exigent circumstances in which police action literally must be "now or never" to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation.[6] See *Chambers* v. *Maroney,* 399 U. S. 42, 47–51 (1970). Cf. *Carroll* v. *United States,* 267 U. S. 132 (1925). The facts surrounding the "massive seizures" of books in *Marcus*

---

[6] Counsel for Kentucky, together with counsel for New York in *Heller* v. *New York, ante,* at 493, and counsel for California as *amicus curiae* in *Heller,* have emphasized that allegedly obscene films are particularly difficult evidence to preserve unless kept in custody. We again take judicial notice that films may be compact, may be easy to destroy or to remove to another jurisdiction, and may be subject to pretrial alterations by cutting out scenes and resplicing reels. See *ibid.* But, as the *Heller* case demonstrates, where films are scheduled for exhibition in a commercial theater open to the public, procuring a warrant based on a prior judicial determination of probable cause of obscenity need not risk loss of the evidence.

and *A Quantity of Books,* or the seizure of the film in *Lee Art Theatre,* presented no such "now or never" circumstances.

## II

The film seized in this case was being exhibited at a commercial theater showing regularly scheduled perform-ances to the general public. The seizure proceeded solely on a police officer's conclusions that the film was obscene; there was no warrant. Nothing prior to seizure afforded a magistrate an opportunity to "focus searchingly on the question of obscenity." See *Heller* v. *New York, ante,* at 488–489; *Marcus* v. *Search Warrant,* 367 U. S., at 732. If, as *Marcus* and *Lee Art Theatre* held, a warrant for seizing allegedly obscene material may not issue on the mere conclusory allegations of an officer, *a fortiori,* the officer may not make such a seizure with no warrant at all. "The use by government of the power of search and seizure as an adjunct to a system for the suppression of objectionable publica-tions is not new. . . . The Bill of Rights was fashioned against the background of knowledge that unrestricted power of search and seizure could also be an instrument for stifling liberty of expression." *Marcus* v. *Search Warrant, supra,* at 724, 729. In this case, as in *Lee Art Theatre,* the admission of the film in evidence requires reversal of petitioner's conviction. 392 U. S., at 637.

The judgment of the Court of Appeals of Kentucky is reversed and this case remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

[For dissenting opinion of MR. JUSTICE DOUGLAS, see *ante,* p. 494.]

MR. JUSTICE BRENNAN, with whom MR. JUSTICE STEW-ART and MR. JUSTICE MARSHALL join, concurring in the judgment.

We granted certiorari to consider the holding of the Court of Appeals of Kentucky that the Constitution does not require an adversary hearing on obscenity prior to the seizure of reels of film, where the seizure is incident to the arrest of the manager of a drive-in movie theater. 473 S. W. 2d 814 (1971). The statute under which the prosecution was brought* is, in my view, unconstitutionally overbroad and therefore invalid on its face. See my dissent in *Paris Adult Theatre I* v. *Slaton, ante,* p. 73. I would therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings not inconsistent with my dissenting opinion in *Slaton.*

---

*Ky. Rev. Stat. § 436.101 (2) provides in part that

"Any person who, having knowledge of the obscenity thereof, sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is punishable by fine of not more than $1,000 . . . or by imprisonment in the county jail for not more than six (6) months . . . ."