824

Charlie Edward SMITH, Defendant-
Appellant,

v.

UNITED STATES of America,
Plaintiff-Appellee.

William Melvin CHRISTMAN, Defend-
ant-Appellant,

v.

UNITED STATES of America,
Plaintiff-Appellee.

Charles Edward SMITH and George David
Duncan, Defendants-Appellants,

v.

UNITED STATES of America,
Plaintiff-Appellee.

Nos. 73-2062, 73-2141, 73-2142.

United States Court of Appeals,
Sixth Circuit.

Nov. 13, 1974.

Gilbert H. Deitch, Atlanta, Ga., Joseph J. Levitt, Jr., Knoxville, Tenn., Robert Eugene Smith, Baltimore, Md., George E. Paire, Knoxville, Tenn., Howard J. Greenwald, Charlotte, N. C., for defendants-appellants.

John L. Bowers, U. S. Atty., Edward E. Wilson, Charles N. Stedman, Carl P. McDonald, Knoxville, Tenn., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and WEICK and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Involved here are appeals by three defendants-appellants convicted for interstate transportation of obscene films in a common jury trial (Nos. 73–2141 and 73–2142); also involved is an appeal from an order dismissing appellant Smith's civil action for the return of seized property (No. 73–2062). Appellants Duncan and Smith joined in the brief filed in appeals Nos. 73–2062 and 73–2142, and appellant Christman filed separate briefs in No. 73–2141. Each appellant has adopted by reference the arguments advanced by his co-appellants pursuant to Rule 28(i), Fed.R.App.P.

The facts are not in dispute. Richard Nunnally, a resident of Knox County, Tennessee, testified that he received a telephone call at his residence on November 7, 1972. The caller stated that a mutual friend, one George Duncan, had given him Nunnally's name. The caller asked Nunnally whether he would be interested in some stag movies. Nunnally was noncommittal. A few days later, Nunnally received a phone call from the same individual who this time identified himself as Charlie Smith. Smith told Nunnally that he had made arrangements to obtain 2,400 reels of film and that he would like to meet to talk business. Nunnally received a third call from a person identifying himself as Charlie Smith on November 13, 1972, and subsequent to this phone call Nunnally contacted the Knox County State Attorney General's Office, the Knoxville Police Department and the Federal Bureau of Investigation.

The following day, November 14, 1972, Nunnally, agent Shanahan of the FBI and Captain Odom of the Knoxville Police Department, met Smith at a motel in Knoxville where Smith displayed three reels of sexually explicit film to them. Arrangements were made at this meeting for the purchase of additional stag films at a later date. A further contact firmed the contemplated transaction for the sale of some 2,000 stag films (at $6.75 per reel) on Friday, November 17, 1972, at the Holiday Inn West in Knoxville.

Nunnally and a number of federal agents went to Smith's room at the Holiday Inn as planned, but Smith did not have the films with him in the room. Smith made a telephone call and appellants George Duncan and Melvin Christman appeared shortly thereafter. A quantity of films was unloaded from a Buick automobile parked outside the room and a random sampling of the films was made by agent Shanahan. Each of the appellants, as well as the agents present, assisted in unloading the automobile. After unloading, appellants Duncan and Christman left the motel room, got back into the Buick and drove away. They returned within a short time with another load of films and the second load was moved into the motel room.

Appellant Smith made it clear that he wanted to be paid before he turned the films over to Nunnally and his associates. In the presence of all the appellants agent Shanahan pulled a roll of money from his pocket and handed it to Smith. As Smith took the money in hand, Shanahan drew his revolver, announced that he was with the FBI, and placed appellants under arrest. FBI agents took 2,109 reels of film and 280 tapes into custody.

Each of the appellants was interrogated while in custody. After being advised of his constitutional rights, and in spite of the fact that he said he did not wish to make any statements concerning the allegedly obscene materials, appellant Smith told an FBI agent that this was the first time anything like this had happened to him and that he knew he should not have done it. Similarly, appellant Christman refused to waive his rights but nonetheless volunteered that he had driven a 1973 Thunderbird from North Carolina with some of the materials seized at the time of the arrest. He also stated that the seized materials belonged to him.

Appellant Duncan executed a waiver of rights form and told his questioner that he had been in Charlotte, North Carolina, on the morning of November 17, 1972, and that another individual had come to his residence. He, together with this other individual, left Charlotte some time between 8:00 and 9:00 a. m. that morning and arrived in his Buick automobile in Knoxville, Tennessee, between 1:00 and 1:30 that afternoon. He further stated that there was another automobile with two individuals traveling with them in convoy and that they had loaded the car before they left Charlotte. After having made the first statement that they had loaded the car in Charlotte before they left, he changed the statement to say that the material in his car had been loaded from another car in Knoxville.

On April 30, 1973, appellant Smith filed a Complaint for Preliminary and Permanent Injunction, Declaratory Judgment and/or in the alternative, Motion for Return of Evidence under Rule 41(e), Fed.R.Crim.P. On that same date the district court denied the Rule 41(e) motion on the grounds that there was not at that time a criminal action pending against Smith. The United States filed its answer to the complaint on July 2, 1973, and on July 6, 1973, the district court dismissed the complaint on the grounds that the issues raised were moot because in the interim Smith had been tried before a jury and found guilty.

A single count indictment was returned on May 9, 1973, and appellants responded by filing a number of pretrial motions including motions for suppression of evidence, return of evidence, separate trial and dismissal of charges. All pretrial motions were summarily denied with the exception of appellant Christman's motion for suppression of evidence, which was denied after an evidentiary hearing. During the course of the trial each of the appellants moved for acquittal on the grounds that the government had failed to introduce sufficient evidence. These motions were also overruled. Following the guilty verdict rendered by the jury the court sentenced each appellant to 30 months in prison.

Appellants attack the statute under which they were prosecuted, 18 U.S.C. § 1465, as unconstitutional under the standards announced in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L. Ed.2d 419 (1973). As a corollary, they contend that the indictment thereunder was fatally defective in that it did not state facts sufficient to constitute an offense against the United States.

The statute involved prohibits the knowing transportation "in interstate or foreign commerce for the purpose of sale or distribution of any obscene, lewd, lascivious or filthy . . . film . . . ."[1] Appellants argue (1) that § 1465 is not properly limited to any specifically defined sexual conduct; (2) that the statute requires that materials

---

1. 18 U.S.C. § 1465 reads, in pertinent part, as follows:

"Whoever knowingly transports in interstate or foreign commerce for the purpose of sale or distribution any obscene, lewd, lascivious, or filthy book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, cast, phonograph recording, electrical transcription or other article capable of producing sound or any other matter of indecent or immoral character, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

be judged by a national standard not subject to rational definition; and (3) that the statute has read into it the "utterly lacking in redeeming social value or importance" standard rejected by the Supreme Court as vague and ambiguous. These arguments, based on Miller v. California, *supra*, were submitted before the Supreme Court's decision in Hamling v. United States, 418 U.S. 87, 94 S. Ct. 2887, 41 L.Ed.2d 590 (1974), was handed down. As will hereinafter become apparent, *Hamling* provides the answer to each of the above contentions.

■ In *Hamling* the Supreme Court rejected an argument that 18 U.S.C. § 1461,[2] which makes criminal the use of the mails to distribute prohibited materials in terms nearly identical to those used in § 1465, was unconstitutionally vague because it did not specifically define the types of sexual conduct that are "obscene, lewd, lascivious or filthy." Finding that "the language of 18 U.S.C. § 1461 had been, prior to . . . Miller, authoritatively construed in a manner consistent with *Miller*,"[3] the Court unequivocally stated that "[a]t no point does *Miller* . . . intimate that the constitutionality of pre-*Miller* convictions under statutes such as 18 U.S.C. § 1461 was to be cast in doubt." 418 U.S. at 112, 94 S.Ct. at 2905. In addition, after noting that it had construed a similar statute to be limited to the type of offensive representations of conduct contemplated by *Miller*,[4] the Court held that § 1461 passed constitutional muster whether judged by pre- or post-*Miller* standards. 418 U.S. at 115–116,

---

2. 18 U.S.C. § 1461 reads:

"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and—

"Every article or thing designed, adapted, or intended for preventing conception or producing abortion, or for any indecent or immoral use; and

"Every article, instrument, substance, drug, medicine, or thing which is advertised or described in a manner calculated to lead another to use or apply it for preventing conception or producing abortion, or for any indecent or immoral purpose; and

"Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or how, or from whom, or by what means any of such mention·d matters, articles, or things may be obtained or made, or where or by whom any act or operation of any kind for the procuring or producing of abortion will be done or performed, or how or by what means conception may be prevented or abortion produced, whether sealed or unsealed; and

"Every paper, writing, advertisement, or representation that any article, instrument, substance, drug, medicine, or thing may or can, be used or applied for preventing conception or producing abortion, or for any indecent or immoral purpose; and

"Every description calculated to induce or incite a person to so use or apply any such article, instrument, substance, drug, medicine, or thing—

"Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

"Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

"The term 'indecent', as used in this section includes matter of a character tending to incite arson, murder, or assassination. June 25, 1948, c. 645, 62 Stat. 768; June 28, 1955, c. 190, §§ 1, 2, 69 Stat. 183; Aug. 28, 1958, Pub.L. 85–796, § 1, 72 Stat. 962."

3. Manual Enterprises, Inc. v. Day, 370 U.S. 479, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962). Section 1465 has also been found constitutional. United States v. Manarite, 448 F.2d 583 (2d Cir.), cert. denied, 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971).

4. The Supreme Court found 18 U.S.C. § 1462 constitutional. United States v. 12 200-ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973).

94 S.Ct. 2887. In light of the above, it is clear that § 1465 gives fair notice of the type of conduct that constitutes a criminal offense.

 Likewise, in *Hamling* the Court found meritless the argument that § 1461 required the application of a non-existent national standard. The trial court in *Hamling* had referred to a national standard in its jury instructions, but the Court nonetheless concluded that reversal was required "only where there [was] a probability that the excision of the references to the 'country as a whole' in the instructions dealing with community standards would have materially affected the deliberations of the jury." 418 U.S. 108, 94 S.Ct. at 2903. The jury in the case at bar received the following instruction on community standards:

> "Contemporary community standards are set by what is in fact accepted in the community as a whole; that is to say, by society at large or people in general in the entire nation, and not by what some persons or groups may believe the community as a whole ought to accept or refuse to accept. It is a matter of common knowledge, of which this Court takes judicial notice, that customs change, and that the community as a whole may from time to time find acceptable that which was formerly unacceptable."

Examination of the record in this case, and particularly of the charge read in its entirety, leads us to conclude that appellants were not materially prejudiced by the reference to the "entire nation" in the above instruction.

Appellants also complain that § 1465 has read into it the ambiguous "utterly lacking in redeeming social value" test rejected in *Miller*. The favorable outcome of an argument along these lines depends, however, upon the premise that appellants could derive some benefit from the rejection of this social value test, a premise refuted by *Hamling*. As Mr. Justice Rehnquist pointed out in *Hamling*, *Miller* signaled a return to the definition of obscenity in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L. Ed.2d 1498 (1957), and constituted a lessening of the prosecutorial burden. "Since *Miller* permits the imposition of a lesser burden on the prosecutor . . . than did *Memoirs* [Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966)], and since the jury convicted these petitioners on the basis of an instruction concededly based on the *Memoirs* test, petitioners derive no benefit from the revision of that test in Miller." 418 U.S. at 116–117, 94 S.Ct. at 2907.

 The challenged indictment charged an offense in the language of § 1465, set out the required particulars of time and place, and listed in detail the materials considered obscene. It is well settled that an indictment may be properly drawn using the language of the statute in the general description of the offense. *Hamling*, 418 U.S. at 117, 94 S.Ct. 2887. Furthermore, as our opinion hereinabove indicates, § 1465 is not unconstitutionally vague. Appellants' challenge is, therefore, without merit.

Appellants assert that the district court erred in denying motions to suppress the films seized by the agents at the time of the arrests. Appellant Smith additionally argues that he was erroneously denied an independent hearing on his preindictment motion to suppress. In view of our finding that the seizure was legal, however, we need not consider Smith's contention.

FBI agents took possession of the films immediately following the arrests. The crime for which appellants were arrested was committed in the presence of the agents; the sale of obscene materials that had been transported in interstate commerce. The agents could not have secured a search warrant prior to the arrests because until the films were moved into the motel room there was no way of determining where the films

were or where they would be transferred. It is a classic case "[w]here there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime . . . ." Roaden v. Kentucky, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973); see United States v. Apple, 305 F.Supp. 330 (D. Md.1968).

█ This court is fully aware of the Fourth Amendment limitations on the seizure of allegedly obscene materials being exhibited or distributed to the public. Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); Roaden v. Kentucky, *supra*. But,

> "The defendants here were not operating either a bookstore or a motion picture theatre with the public invited to purchase material or to view screenings. This was strictly an underground operation in hard core pornography . . . . The 'setting' then is hardly such as to presumptively invoke First Amendment protection. . . . The defendants were dealing commercially in large scale fungible smut." United States v. Cangiano, 491 F.2d 906, 913 (2d Cir. 1974).

This language is precisely applicable to the situation before us, and we hold that no error resulted from the denial of the motion to suppress. We further note, in this regard, that the district court afforded appellant Christman an independent hearing on his motion to suppress prior to the trial. Present at that hearing were all the appellants and their attorneys.

██ Appellants object to the trial court's refusal to strike certain testimony relating to the admissions made by appellant Christman to an FBI agent while he was in custody following his arrest. They argue that no statement made by Christman after he had refused to waive his rights should have been admitted, and that there was insufficient corroborative evidence of his guilt to support the alleged admissions. The record shows that Christman refused to waive his rights but did consent to furnish "background" information to the interrogating agent. It was while he was providing the so-called "background" information that Christman made the challenged admissions. It appears that the detrimental admissions were made voluntarily and without hint of coercion.

The general rule is that all interrogation must cease if a suspect indicates that he wishes to remain silent. However, there is authority for the proposition that police may continue the interrogation in any subject-area that the suspect is willing to talk about. Hill v. Whealon, 490 F.2d 629 (6th Cir. 1974); United States v. Vasquez, 476 F.2d 730 (5th Cir. 1973). The Fifth Circuit noted that in applying the above exception courts must carefully scrutinize the circumstances to determine that the police did not use subterfuge to extract information about matters relating to subjects that the suspect did not want to discuss. No such subterfuge was involved herein. We are satisfied that neither appellant's privilege against self-incrimination nor his right to counsel was offended during the custodial questioning, see United States v. La-Monica, 472 F.2d 580 (9th Cir. 1972), and that there was ample evidence of record to corroborate the admissions.

Appellants made a number of other assignments of error, which after close examination, we have found to be without merit.

The judgments are affirmed.