373 So.2d 672 (1979)
Churchill ROBERTS, Appellant,
v.
STATE of Florida, Appellee.
No. 54135.
Supreme Court of Florida.
July 18, 1979.
*673 George W. Estess of Kerrigan, Estess & Rankin, Pensacola, and Fletcher N. Baldwin, Jr., Gainesville, for appellant.
Jim Smith, Atty. Gen. and Randy Schwartz, Asst. Atty. Gen., Tallahassee, for appellee.
David M. Rabban, American Association of University Professors, Washington, D.C., Frederick F. Schauer, Marshall-Wythe School of Law, College of William and Mary, Williamsburg, Va., and Victor J. Stone, General Counsel, American Association of University Professors, Champaign, Ill., for American Association of University Professors, amicus curiae.
HATCHETT, Justice.
We have for review a court order providing for the destruction of obscene materials after seizure, which upheld the validity of section 847.011(7), Florida Statutes (1975). Our jurisdiction vests under article V, section 3(b)(1), Florida Constitution. The case may be disposed of by a construction of the statute which does not involve a ruling upon its constitutionality. We reverse.[*]
Roberts, a professor of mass communications at the University of West Florida, played a video tape of the film "Deep *674 Throat" for his communications class in order to give the students a "common frame of reference for debate, analogous to what a jury or appellate court might face in deliberating upon the obscenity of a particular work." Viewing of the film was optional. In furtherance of an investigation conducted by the state attorney's office, Roberts voluntarily surrendered the film to the state's attorney. Later, the state moved the trial court to confiscate and destroy the film under the authority of section 847.011(7), Florida Statutes. In an order denying Roberts's motion to dismiss the trial court upheld the constitutionality of the statute, both on its face and as applied, and granted the state's petition to destroy the film.
We are urged to rule on numerous issues, including: the obscenity of the film; the statute's effect upon Roberts's first, fourth, fifth, and sixth amendment rights; the legal propriety of allowing the state attorney to testify as to contemporary community standards; and, the effect of obscenity statutes on academic freedom. We decline to rule on any of these issues because we believe this case is resolved by our construction of the statute.
Section 847.011(7) provides as follows: There shall be no right of property in any of the materials, matters, articles, or things possessed or otherwise dealt with in violation of this section, and upon the seizure of any such material, matter, article or thing, by any authorized law enforcement officer, the same shall be delivered to and held by the clerk of the court having jurisdiction to try such violation. When the same is no longer required as evidence, the prosecuting officer or any claimant may move the court in writing for the disposition of the same and after notice and hearing, the court, if it finds the same to have been possessed or otherwise dealt with in violation of this section, shall order the sheriff to destroy the same in the presence of the clerk; otherwise, the court shall order the same returned to the claimant if he shows that he is entitled to possession. If destruction is ordered, the sheriff and clerk shall file a certificate of compliance. [Emphasis added.]
The appellant contends that this subsection is unconstitutional in that it violates his right against the unlawful seizure of his property guaranteed by article I, section 12, of the Florida Constitution and the fourth amendment to the Constitution of the United States. We find that no "seizure" was conducted as that term is used in subsection 847.011(7), and that the materials were therefore not properly brought before the trial court for an obscenity determination. Accordingly, we do not reach the constitutional challenges.
To understand what the legislature meant by the use of the term "seizure" in subsection 847.011(7), we must first recognize how the subsection corresponds to the statutory scheme of which it is a part. Section 847.011(1)-(6) provides a thorough description of criminal conduct involving obscene materials. Subsection 847.011(7) has two substantive effects: (1) it declares that there is no property right in any materials possessed or otherwise dealt with "in violation of this section"; and, (2) it describes what is to be done with the seized materials after an adjudication on obscenity has been made. This subsection, then, is ancillary in nature. Its purpose is to state what becomes of allegedly obscene materials after a final determination has been made as to their obscene nature under section 847.011. The word "seizure" is used only to designate the time frame to which the subsection refers. The subsection does not define "seizure." To determine the meaning of the term "seizure" as contemplated by the legislature in subsection 847.011(7), we must therefore look to the well established body of case law defining the term in the obscenity context.
The seizure of any material arguably protected by the first amendment must sustain a particularly "high ... hurdle in the evaluation of reasonableness" under the fourth amendment. Roaden v. Kentucky, 413 U.S. 496, at 504, 93 S.Ct. 2796, at 2801, 37 L.Ed.2d 757 (1973). For *675 this reason, before allegedly obscene materials may be constitutionally taken and preserved for evidence in a criminal or injunctive proceeding, a preliminary "determination of probable obscenity" must be made by a neutral magistrate. Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). This court has applied this test to uphold the confiscation of obscene films where the seizure was made upon the issuance of a warrant, following a careful judicial inquiry into their allegedly obscene nature. Rhodes v. State, Fla., 283 So.2d 351 (1973); Davison v. State, Fla., 288 So.2d 483 (1973).
Although in this case the film was voluntarily surrendered on May 12, 1977, the record reflects that on June 28, 1977, Roberts demanded a return of the film, thereby withdrawing his consent to its continued possession and use. No warrant ever issued and no judicial inquiry into probable obscenity was made prior to the actual hearing on the state's petition for the confiscation and destruction of the film in March, 1978. We conclude that under these facts no "seizure" ever occurred in accordance with the test described above, and as contemplated by the legislature in its use of that term in subsection 847.011(7). Because there was no legitimate "seizure," the film was never properly brought before the trial judge for his adjudication as to its destruction.
We condemn the procedure here for a second reason. As noted above, subsection 847.011(7) is ancillary in nature. Its provision as to the disposition of allegedly obscene material comes into play only when a trial judge has made a determination as to criminal conduct under subsections 847.011(1)-(6). The state's attorney in this case attempted to use subsection 847.011(7) to confiscate and destroy the film prior to a judicial determination of criminal conduct under subsections 847.011(1)-(6). Subsection 847.011(7) was not designed for this purpose.
Accordingly, we hold that no "seizure" occurred as the term is used in subsection 847.011(7) and that the film did not properly reach the trial court for any final adjudication. We further hold that subsection 847.011(7) will not support an action for destruction of allegedly obscene materials apart from a prior adjudication of criminal conduct under subsections 847.011(1)-(6). In light of our holding, we do not reach appellant's constitutional challenges.
The ruling of the trial court is reversed.
It is so ordered.
ENGLAND, C.J., and ADKINS, OVERTON, SUNDBERG and ALDERMAN, JJ., concur.
BOYD, J., dissents.
NOTES
[*] A thorough amicus curiae brief was submitted in this appeal by the American Association of University Professors. Counsel for the Association also presented oral argument before the court.