OPINION OF THE COURT
Joseph Jaspan, J.
The indictment charges defendant with 18 separate *600 counts of promoting an obscene sexual performance by a child (Penal Law, § 263.10).
In a memorandum decision dated January 28, 1982 (People v Godek, 112 Misc 2d 512), this court held, inter alla, that the statute was constitutional.
After a substitution of counsel the defendant, under the guise of a motion to reargue, sought to controvert an underlying warrant as merely justifying a prior nonjudicial determination to seize allegedly obscene material and also challenged the validity of the charge to the Grand Jury.
To the extent that the defendant raised the constitutional issue of search and seizure, the motion to reargue was granted with the ultimate determination to be based upon facts presented at a nonjury trial. The defendant also moves to consolidate all 18 counts into one charge.
FINDINGS OF FACT
In an effort to detect and stop the import of pornographic material into the United States, the United States Customs Service responds under pseudonyms to ads in various journals soliciting “members” with common interests in sexually explicit material.
As a result United States Customs Inspector Martin Locker received a reply from the defendant directed to him at a post-office box in which Mr. Godek wrote in part: “Your name was referred to me by a service in New York as someone who might have similar interests. That is an interest in boys 12 to 15” and suggested a meeting “to exchange magazines, films and/or experiences.”
After additional correspondence a meeting was arranged between Inspector Locker and the defendant at a shopping center in Hicksville.
At that meeting Godek asked Locker if he would be interested in seeing what he had available. After receiving an affirmative response, they went to defendant’s 1975 Pontiac and there looked at about 15 magazines and a catalogue of films all involving child pornography and particularly homosexual conduct between young boys.
*601 Arrangements were made for another meeting at the Holiday Inn in Hauppague on October 19, 1981 at which time they were to exhibit to each other the material they had. Defendant agreed to talk about the selling of his materials.
The customs inspector with the aid of the District Attorney rented the room and wired it so that any conversation could be recorded.
Defendant arrived at the motel room with a bag of material, a camera and a projector. He displayed some of the magazines and offered to exhibit one of the films. When he started to put one of the films on the projector he was arrested.
The tape included conversation about the subject matter of the magazines and films, contained inclusive language about selling the material and such statements by defendant as “well I have mostly only boys though * * * Here’s the ones I bought in the city (inaudible). These are all guys (inaudible) from the city.”
The source of the material was stated by the defendant to be the United States as well as foreign.
At the time of defendant’s arrest the police seized 11 films and 41 magazines all conceded by the defense to be obscene and to involve boys under the age of 16. This court has examined the magazines and viewed the films and indeed found them to consist of obscene sexual performances as defined in subdivision 2 of section 263.00 of the Penal Law by children under the age of 16.
Within three hours after the arrest of the defendant the magazines and films seized in the motel room were taken to a Judge of the District Court of Suffolk County who viewed them and concluded in the early morning hours of October 20, 1981 that they: “depicted explicit acts of deviate sexual intercourse between males less than sixteen (16) years old, acts of fellatio between males less than sixteen (16) years old, and acts of lewd exhibition of genitals by males less than sixteen (16) years old” and that when considered as a whole they appeal to prurient interests in sex and are patently offensive to prevailing standards in the adult community. A search warrant authorizing their seizure was signed.
*602 The Judge also authorized the police to search defendant’s home and car for “copies” of obscene films and magazines enumerated on an attached schedule.
The latter search of the vehicle uncovered 11 other magazines which were brought back to the Judge on October 21, 1981 who made the same findings referred to above, a finding concurred in by this court.
The defendant testified at the trial and acknowledged his interest in the material which he described as “for his own private use”. He admitted, however, that he might possibly have exchanged the magazines and films.
CONCLUSIONS OF LAW
SEARCH AND SEIZURE — PRIOR JUDICIAL RESTRAINT
Defendant challenges the legality of the seizure of the items taken from the motel room and the subsequent search and seizure of his car.
If the motion were limited to issues of search and seizure, this court would rule that (1) defendant did not have standing to challenge the seizure of material he brought into and displayed or offered to display to others in a motel room rented by the District Attorney (United States v Salvucci, 448 US 83); (2) in any event, the seizure in the motel room was an incident to a lawful arrest based upon probable cause; and (3) that the application for the search of the automobile was amply justified by the known facts as set forth in the supporting affidavit. These documents should not be read in a hypertechnical sense (People v Hanlon, 36 NY2d 549) so that a request to search for copies of pornographic material did not preclude discovery of obscene magazines which did not duplicate those already in the possession of the police. The magazines found were in plain view (Coolidge v New Hampshire, 403 US 443).
But the issue is more complex involving as it does the interplay of the First and Fourth Amendments and a general requirement of prior judicial scrutiny precluding a determination by the police alone as to what is obscene.
In Roaden v Kentucky (413 US 496) the question presented was whether the seizure of alleged obscene material contemporaneous with and as an incident to an arrest for *603 the public exhibition of such material in a commercial theatre may be accomplished without a warrant.
The court noted its prior decisions in Marcus v Search Warrant (367 US 717) and A Quantity of Books v Kansas (378 US 205) which held that a warrant for the seizure of allegedly obscene books could not be issued on the conclusory opinion of a police officer that the books sought to be seized were obscene, without prior judicial scrutiny.
However, the Roaden court further wrote that a common thread was to be found in these cases and in Lee Art Theatre v Virginia (392 US 636) which related to the nature of the materials seized and the setting in which they were taken.
It wrote (p 504): “In each case the material seized fell arguably within First Amendment protection, and the taking brought to an abrupt halt an orderly and presumptively legitimate distribution or exhibition. Seizing a film then being exhibited to the general public presents essentially the same restraint on expression as the seizure of all the books in a bookstore. Such precipitate action by a police officer, without the authority of a constitutionally sufficient warrant, is plainly a form of prior restraint and is, in those circumstances, unreasonable under Fourth Amendment standards. The seizure is unreasonable, not simply because it would have been easy to secure a warrant, but rather because prior restraint of the right of expression, whether by books or films, calls for a higher hurdle in the evaluation of reasonableness. The setting of the bookstore or the commercial theater, each presumptively under the protection of the First Amendment, invokes such Fourth Amendment warrant requirements because we examine what is ‘unreasonable’ in the light of the values of freedom of expression.”
While holding that the Bill of Rights was fashioned to restrict seizure which could also be an instrument for stifling liberty of expression, it wrote significantly (p 505): “Where there are exigent circumstances in which police action literally must be ‘now or never’ to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation.”
*604 In United States v Cangiano (491 F2d 906), the Second Circuit declined to expand Roaden to hold that the warrantless seizure of magazines and films was per se unreasonable.
The defendants there conceded, as the defendant here concedes, that the materials seized were obscene. The defendants were engaged in an underground operation in hardcore pornography with clandestine storage facilities not intended to be available to the public but only to trusted customers. The court ruled that since the seizure was not there made for the purpose of destruction nor for the purpose of blocking the public from viewing commercial films or reading or purchasing books openly displayed but to preserve evidence, there was no violation of First or Fourth Amendment rights.
There is no requirement that an adversary proceeding take place before an initial seizure — only that a judicial determination must occur promptly so that administrative delay does not in itself become a form of censorship (Heller v New York, 413 US 483, 489).
Each case must be determined on its particular facts (G.I. Distrs. v Murphy, 490 F2d 1167, 1169).
Here the police seized 41 magazines and 11 films in the motel room and within three hours produced them before a Judge of the District Court for scrutiny as to whether they constituted obscene material.
The transient nature of the meeting dictated immediate police action to preserve the evidence. The defendant would not be expected to “remain in place” with the magazines and films he had transported while police devised a method for judicial review.
Under the exigent circumstances of the case the police did not exceed their authority. Any claim of police censorship is negated by their prompt action in bringing the seized material to a Judge for review.
The motion to suppress is denied.
THE MOTION TO CONSOLIDATE
The indictment contains 18 separate counts involving the defendant’s alleged promotion of 52 magazines and 11 films. The allegations contained in each count differ from *605 one another only as to magazines or films which are named therein.
The defendant moves to consolidate these charges and relies on Matter of Braunstein v Frawley (64 AD2d 772) in which the court held that the possession of several items of obscene material with intent to promote constitutes a single criminal transaction and may not be separately stated as individual counts in an indictment.
CPL 40.10 (subd 2) defines criminal transaction. “ ‘Criminal transaction’ means conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture.”
In the present case, there is no rational distinction as between the first 12 counts which relate to the materials seized in the motel room. It is alleged that these films and magazines, all depicting obscene sexual acts by children, were brought into the motel room as part of the defendant’s purpose to promote as later defined herein and therefore constituted integral parts of a single criminal venture.
Accordingly, these counts should be and are consolidated and are designated collectively as count 1.
The magazines referred to in counts 13 through 18 were seized from the defendant’s vehicle and if that possession constituted a violation of section 263.10 of the Penal Law it arises from a related but nevertheless different fact pattern and does not constitute an element or integral part of the same criminal venture. It shall collectively constitute count 2 of this indictment.
This ruling is consistent with the ultimate findings in this case referred to infra.
THE SUBSTANTIVE ISSUE
The defendant admits that the 52 magazines and 11 films seized by the police were in fact obscene and that they constituted performance by children less than 16 years old. He further concedes that within the meaning of subdivision 5 of section 263.00 of the Penal Law the defendant *606 “promoted” at least some of the magazines and at least one film. Promote is defined in that statute as follows: “ ‘Promote’ means to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit or advertise, or to offer or agree to do the same.”
The threshold question is whether the State of New York can regulate private conduct with respect to these obscene materials between consenting adults where the conduct is noncommercial and does not involve public distribution.
As indicated in the findings of fact, the defendant did not offer the materials for sale but limited his activity to the private showing and potentially a subsequent exchange with an adult who knew in advance the general purpose of their meeting.
Stanley v Georgia (394 US 557) held that a State may not prosecute an individual for possession of obscene material within the confines of his home.
That ruling was reaffirmed in United States v 12 200-Ft. Reels of Film (413 US 123), wherein the court said that there was a constitutional right to possess obscene material in the privacy of one’s home. It noted, however, that the right of privacy did not extend to the right to acquire it or import it from another country.
The defendant, relying on United States v Dellapia (433 F2d 1252) and People v Marzano (31 AD2d 52), urges that the rule in Stanley (supra) extends to private activity between consenting adults, wherever it occurs.
In Dellapia (supra, p 1255) the parties exchanged obscene materials after defendant responded to an ad in a magazine entitled Swingers Life. The court did hold that the Supreme Court did not intend that “one forfeit the shelter of Stanley merely by sharing his private collection of obscenity with another for his private use.” It added that this did not extend to possession with intent to distribute publicly.
In Marzano (supra) the defendant displayed a number of photographs and periodicals found to be obscene to a 16-year-old boy within the confines of a locked store. The court set aside the conviction holding that the statutes (Penal *607 Law, §§ 235.00-235.10) which proscribed “giving away or lending obscenity” is not to be directed to private use.
The District Attorney on the other hand points to the later rulings in Paris Adult Theatre I v Slaton (413 US 49) and United States v Orito (413 US 139) decided the same day.
In Paris Adult Theatre I the court held that obscene pornographic motion pictures unprotected by the First Amendment did not acquire constitutional immunity from State regulation simply because they were exhibited for consenting adults only.
However, in this case there was a public showing in a theatre for which an admission fee was charged and the element of privacy was lacking.
In Orito (supra) the court again noted that there was a constitutional right to possess obscene materials in the privacy of one’s home but that right did not create a correlative right to receive it, transport it or distribute it. It wrote (p 143): “The Court has consistently rejected constitutional protection for obscene material outside the home.”
This opinion overrules by implication the quoted ruling in Dellapia and denied constitutional protection to the private exchange of obscene materials outside the home of one of the participants.
That does not mean, however, that the State obscenity statutes and particularly section 263.10 of the Penal Law cannot be interpreted as to preclude prosecution for private activity and as stated in Marzano (supra, p 53) be limited to the “spreading obscenity before the public.”
However appropriate this interpretation may be with respect to the obscenity statutes in article 235 of the Penal Law, it is not applicable to the provisions of article 263 of the Penal Law enacted in 1977 and which is directed to sexual performance by a child.
The Supreme Court has repeatedly recognized the high importance of the State interest in protecting juveniles from the exposure to obscene materials (Paris Adult Theatre I v Slaton, supra, p 57; Miller v California, 413 US 15, *608 18-20; Stanley v Georgia, supra, p 567; Redrup v New York, 386 US 769). That would extend to participation in obscene acts memorialized by a camera.
Consistent therewith the Legislature in enacting article 263 of the Penal Law declared that (L 1977, ch 910, § 1): “The public policy of the state demands the protection of children from exploitation through sexual performances.”
The New York Court of Appeals in People v Ferber (52 NY2d 674, 679) in ruling as to the constitutionality of a section embraced within article 263 of the Penal Law but not involved in this case wrote: “the purpose of the statute is not to protect the audiences from viewing offensive materials, but to protect the performers from being exploited by removing the commercial incentive for such productions.”
It added (p 679) that the “State has a legitimate interest in protecting the welfare of minors within its border, and, at times, that interest may transcend First Amendment concerns”.
In a dissenting opinion in Ferber, Judge Jasen wrote (p 685): “The State’s overriding interest in the welfare of children has been recognized in many contexts and is often relied upon by the Legislature to protect children from their own inexperience or as a basis for denying adults rights which they might otherwise have because the exercise of those rights might cause harm to children.”
Unlike the obscenity cases referred to in the Federal cases cited or in People v Marzano (supra), the thrust of the statute at issue is not censorship but an attempt to prevent the commercialization of obscene activities by children. It is protective of them.
This measure of protection is diminished or lost if obscene films involving boys or girls under 16 can be circulated even for private exchange or private viewing.
The term “promote” as it refers to section 263.10 of the Penal Law does not refer exclusively to spreading obscenity before the public. Here it is not the public who is to be protected but the minors whose involvement will continue only so long as there is some market, public or private, for the finished product.
*609 Ferber raises but does not resolve another issue not adverted to by either the defendant or the District Attorney. The court wrote (p 680): “To the extent the statute [referring to § 263.15] would purport to regulate the sexual performances of children throughout the world there is some question as to whether that goal, however commendable, necessarily comes within the police powers of the State of New York.”
Most of the films and magazines in this case appear to originate in Europe. Others, printed in English, do not indicate a point of origin and the People have not proved that the children involved ever resided in this State.
Nevertheless this court finds that these films and periodicals are contraband within the meaning of section 263:10 of the Penal Law adopting the rationale of Judge Jasen in the afore-mentioned Ferber case in which he wrote (p 688): “The conduct prohibited causes a market for sexually exploitive material involving children to be maintained in New York. The maintenance of this market leaves open the financial conduit by which the production of such material is funded and materially increases the risk that New York children will be injured. In short, the production of such material outside New York for sale here causes harm in New York and is, therefore, subject to the police power of the State of New York at least insofar as that power operates upon the promotion of such material here.”
As noted in Paris Adult Theatre I (supra), unprovable assumptions underlie much lawful State regulation.
The assumption that obscene films involving children enjoying a profitable market may now or ultimately embrace some who live within this State may not be provable but is nevertheless a rational extension of human conduct which feeds on greed without concern for the collateral effects of that effort.
The defendant acknowledges that he “promoted” some of the material brought into the motel room. This element was proved beyond a reasonable doubt by the testimony of the history of and conduct at the meeting between two strangers for the purpose of disseminating and exhibiting obscene material with a view to a possible exchange.
*610 The conclusion is that magazines and films depicting obscene activity between children under the age of 16 may be criminally prosecuted under section 263.10 of the Penal Law even if the articles are privately displayed to consenting adults and even if there is insufficient proof that the participants resided in this State.
As to count 1, as consolidated herein, the defendant is found guilty of promoting an obscene sexual performance by a' child.
On the other hand, there is insufficient evidence to support a conviction with respect to the material seized from the vehicle on October 20,1981 and now represented by count 2 as consolidated herein.
These 11 magazines were not exhibited to the law enforcement officials and there is no evidence from which it can be concluded that it was the same material displayed at the first meeting on September 24, 1981.
The defendant is found not guilty of consolidated count 2.