Jamela WASHINGTON, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2006–CA–002095–MR.

Court of Appeals of Kentucky.

Aug. 3, 2007.

Denise Redwine, Lexington, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Robert E. Prather, Assistant Attorney General, Frankfort, KY, for appellee.

Before THOMPSON and WINE, Judges; HENRY,[1] Senior Judge.

## OPINION

THOMPSON, Judge.

Jamela Washington appeals from a judgment of the Fayette Circuit Court following her conditional guilty plea to criminal facilitation to trafficking in a controlled substance. Pursuant to her plea, Washington reserved the right to appeal the denial of her suppression motion. Concluding that the trial court did not err, we affirm.

According to the testimony of Officer Steve Cobb, the lone witness at the suppression hearing on October 13, 2005, he and other officers from the Lexington–Fayette County Police Department were conducting an undercover "buy-bust" operation at an apartment complex in the area of 1300 Centre Parkway.

To execute the operation, an undercover informant parked his truck in a parking lot adjacent to an apartment building, and Officer Givens,[2] in an unmarked car, posi-

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

2. While we are using the name referenced in the trial court's suppression order, the name Gibbons has also been used in other documents in the record.

tioned himself so that he had visual contact with the informant's truck where potential drug transactions would take place. Additionally, Officers Cobb, Maynard, and Simmons were each positioned in nearby locations which enabled them to quickly respond and arrest suspects when drug transactions had been made.

At approximately 9:50 p.m., Givens radioed to the three officers that a drug transaction had just been completed. The three officers then drove in the direction of the parking lot where the informant was positioned. As he drove to the area, listening over his car radio, Cobb heard Givens describe the suspect as a black male, wearing jeans, tennis shoes, and a red shirt. Further, Cobb heard Givens state that the suspect had entered the hallway of apartment building 1317. After Cobb had exited his vehicle in pursuit of the suspect, Givens radioed that the suspect was entering the back right apartment of building 1317. However, by this time, Cobb was too far away from his car radio to hear this information.

As the officers entered the hallway of the apartment building, they heard a door being slammed shut. As they reached the middle of the hallway, they smelled a strong odor of burnt marijuana. As they came closer to the two rear apartments, they believed that the marijuana odor was emanating from the left apartment. After approaching the door, Cobb believed that it had recently been opened and closed because of the strong odor of marijuana surrounding it. The officers then knocked on the door and announced themselves as police.

As they requested the opening of the door, Cobb heard movement inside the apartment and feared that evidence might be destroyed if they did not immediately enter the apartment. The door was then kicked in and a protective sweep of the apartment was conducted. After the sweep, Cobb observed narcotics on the coffee table and kitchen counter and discovered a substantial amount of cash in the apartment. At this point, Washington and the two other occupants of the apartment, Clarence Johnson and Hollis King, were arrested. Shortly after these arrests, the apartment across the hall from Washington was searched, and the original suspect was discovered and arrested.

On November 21, 2005, Washington was indicted for trafficking in a controlled substance, first-degree; and trafficking in marijuana over eight ounces. Subsequently, she and her two co-defendants moved to suppress the drug evidence found in her apartment on the basis that it was the fruit of an unlawful search. At the joint suppression hearing, after Cobb's testimony, the trial court required all the parties to submit briefs on the constitutionality of the warrantless search.

Following the submission of these briefs, the trial court denied Washington's motion to suppress as well as the motions of her co-defendants. After the entry of the court's order, Washington entered a conditional guilty plea to first-degree criminal facilitation to trafficking in a controlled substance and was sentenced to twelve months' imprisonment which was probated for two years. This appeal followed.

On appeal, Washington's sole assignment of error is that the trial court erred when it denied her motion to suppress the evidence obtained as a result of the search of her apartment. Specifically, she alleges that the warrantless search of her apartment was conducted in violation of the Fourth Amendment to the United States Constitution because it was unsupported by probable cause and an exigent circumstance. Alleging that the Commonwealth failed to meet its burden in establishing

these two elements, she asserts that her motion should have been granted.

On appellate review of a trial court's denial of a motion to suppress, we apply a two-step process in determining whether the trial court's ruling was correct. *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky.2004). First, we review the trial court's findings of fact under the substantial evidence standard. *Id.* Under this standard, an appellate court will not disturb a trial court's findings of fact if they are supported by substantial evidence. *Commonwealth v. Harrelson*, 14 S.W.3d 541, 549 (Ky.2000). "Substantial evidence is defined as 'evidence of substance and relative consequence having the fitness to induce conviction in the minds of reasonable [persons].'" *Kentucky Unemployment Ins. Com'n v. Landmark Community Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 579 (Ky.2002).

After completing the first step, we then conduct a *de novo* review of the trial court's application of the law to the established facts to determine if its ruling was correct as a matter of law. *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998). In conducting a *de novo* review, we afford no deference to the trial court's application of the law to the established facts. *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky.App. 1998).

In this case, the only evidence presented was from the Commonwealth's witness, Officer Cobb. During the suppression hearing, his testimony was knowledgeable, clear, and consistent. Although Washington points out inconsistencies between Cobb's written post-incident report and his suppression hearing testimony, we cannot substitute our version of the facts for those of the trial court even when there is conflicting evidence in the record. *R.C.R. v. Com. Cabinet for Human Re-sources*, 988 S.W.2d 36, 39 (Ky.App.1998). Determining the proper weight to assign to conflicting evidence is a matter for the trier of fact and not an appellate court. *Bierman v. Klapheke*, 967 S.W.2d 16, 19 (Ky.1998).

Additionally, contrary to the findings of the trial court, Washington challenges the veracity of Cobb's claim that he did not hear Givens say that the suspect had gone into the back right apartment. While Washington is free to make this allegation, we are not free to share in her conclusion because judging the credibility of witnesses and weighing evidence are responsibilities within the exclusive province of the trial court. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.2003).

Accordingly, we conclude that the trial court's findings of fact were supported by substantial evidence because the evidence presented to the trial court was of substance and of relative consequence having the fitness to induce belief in the minds of reasonable persons that Officer Cobb's testimony was reliable. *Com., Dept. of Educ. v. Commonwealth*, 798 S.W.2d 464, 467 (Ky.App.1990).

As to the trial court's application of the law, we first observe that "[i]t is fundamental that all searches without a warrant are unreasonable unless it can be shown that they come within one of the exceptions to the rule that a search must be made pursuant to a valid warrant." *Cook v. Commonwealth*, 826 S.W.2d 329, 331 (Ky.1992). These exceptions, often called exigent circumstances, include situations in which an officer reasonably believes that there is a possibility that evidence of a serious crime may be destroyed. *Taylor v. Commonwealth*, 577 S.W.2d 46, 48 (Ky.App.1979).

Additionally, to support a warrantless search of an individual's private

residence based on exigent circumstances, there must also be probable cause. *Southers v. Commonwealth*, 210 S.W.3d 173, 176 (Ky.App.2006). "Probable cause for a search exists when the facts are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Baltimore v. Commonwealth*, 119 S.W.3d 532, 538 (Ky.App. 2003). The Commonwealth bears the burden of justifying warrantless searches and seizures. *Dunn v. Commonwealth*, 199 S.W.3d 775, 776 (Ky.App.2006).

In this case, as the officers reached the middle of the apartment building's hallway, they smelled a strong odor of burnt marijuana. As they came closer to Washington's door, they believed that the smell was coming from that apartment. Although Washington alleges that the odor could have come from loitering individuals having a smoke, the officers reasonably believed that the odor was coming from Washington's apartment.

As to the warrantless entry of her apartment, Cobb testified that after knocking and announcing the presence of law enforcement that he heard movement within the apartment. With no response to his request to open the door, hearing movement within the apartment, and believing that evidence of a felony was in the apartment, Cobb believed that the occupants of the apartment might be destroying evidence.

■■■■■ "Destruction of evidence is a recognized exigent circumstance creating an exception to the warrant requirement." *Posey v. Commonwealth*, 185 S.W.3d 170, 173 (Ky.2006) (quoting *Commonwealth v. McManus*, 107 S.W.3d 175, 177 (Ky.2003)). If officers have probable cause to believe that a serious crime has occurred and that evidence from that crime is in imminent danger of being destroyed, they may se-

cure the place where the evidence is located in order to prevent its imminent destruction. *Id.*

■■■■ In providing a context of when the danger of the destruction of evidence is imminent, the U.S. Supreme Court held that it is reasonable to permit police to secure the location without a warrant where police action literally must be "now or never" to preserve evidence of a crime. *Roaden v. Kentucky*, 413 U.S. 496, 505, 93 S.Ct. 2796, 2802, 37 L.Ed.2d 757 (1973). In determining whether an officer properly decided that a location had to be immediately secured, we must determine whether the officer reasonably believed that waiting for a search warrant threatened the destruction of evidence. *Schmerber v. California*, 384 U.S. 757, 770–771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

In this case, officers were pursuing a suspected felony drug dealer into an apartment building when they heard a door slam in the direction that he had been running. Upon approaching the vicinity of where they believed the door had been slammed, they believed they smelled a strong odor of burnt marijuana emanating underneath Washington's door. They announced that they were police and requested that the door be opened. Receiving no response and hearing movement within the apartment, Cobb believed that the destruction of evidence of a felony might be imminent and decided to make a warrantless entry into the apartment to prevent the possible destruction of such evidence.

■■■■ While we conclude that an odor of burnt marijuana emanating from a residence standing alone does not justify the warrantless entry of that residence, Cobb's entry into Washington's residence under the facts of this case was justified as an

exigent circumstance. From Cobb's testimony, he was in hot pursuit of a felony suspect; he had a good-faith belief that the suspect had entered the apartment; he believed that drugs and buy money would be found inside the apartment; no one answered the door; he heard people moving around inside the apartment; and, ultimately, he believed that felony evidence might be destroyed if immediate action was not taken. Because these officers were in a situation where they reasonably believed that evidence of a serious crime might be destroyed, they properly disregarded the warrant requirement to prevent the possible destruction of evidence. *U.S. v. Banks,* 540 U.S. 31, 36–38, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003).

These facts created a reasonable basis to support Cobb's belief that he had to act to prevent the possible destruction of this evidence; thus, his entry was justified as an exception to the prohibition against warrantless searches and seizures. *Posey v. Commonwealth,* 185 S.W.3d at 173. Accordingly, the trial court's application of the law to the facts as established was correct as a matter of law.

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.