Hollis Deshaun KING, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2008–SC–000274–DG.

Supreme Court of Kentucky.

Jan. 21, 2010.

Jamesa J. Drake, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Johsua D. Farley, Assistant Attorney General, Attorney General's Office, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCHRODER.

At issue in this case is whether exigent circumstances existed, which justified the warrantless entry of the apartment occupied by Appellant Hollis Deshaun King. We hold that police were not in hot pursuit of a fleeing suspect, and that, with regard to the imminent destruction of evidence, any exigency was police-created. We also note that no "good faith" exception to the exclusionary rule applies in this case. We therefore reverse the judgment of the Court of Appeals.

## I. BACKGROUND

On the evening of October 13, 2005, Lexington–Fayette County police were conducting a "buy bust" operation at an apartment complex on Centre Parkway in Lexington. Police arranged for a confidential informant to purchase crack cocaine from a "street level" dealer. Officer Steven Cobb and several narcotics detectives were nearby in marked police cars waiting to make an arrest after a sale was complete.

After a suspected dealer sold crack cocaine to the confidential informant, undercover officer Gibbons gave a prearranged signal, informing officers to move in and make an arrest. As Cobb drove toward the location of the sale to make the arrest, Gibbons radioed a description of the suspect, and stated that he had entered a specific breezeway at the apartment complex. Cobb testified[1] that Gibbons told officers to hurry, in order to keep the suspect from entering an apartment.

Cobb exited his vehicle, and continued toward the breezeway on foot with two narcotics detectives. After Cobb had exited his vehicle, Gibbons informed officers via radio that the suspect had entered the back *right* apartment. Because they were no longer near a radio, Cobb and the narcotics detectives did not hear this final piece of information. The officers heard a door slam shut, but did not see which apartment the suspect had entered.

When the officers reached the breezeway, they detected the "very strong odor of burnt marijuana." It soon became clear that the smell of marijuana was emanating from the back *left* apartment. Officer Cobb testified at the suppression hearing that this strong odor led him to believe that the left apartment door had been recently opened. However, Cobb stated that he did not know which door he had heard close.

Detective Maynard, one of the narcotics detectives, knocked loudly on the back left apartment door and announced "police." The three officers then heard movement

1. Officer Cobb was the only witness to testify at the suppression hearing.

inside the apartment, which lead the officers to believe that evidence was about to be destroyed.

At this point, the officers made a forced entry into the left apartment. As the circuit court noted in its findings of fact, when asked to articulate the reasons which he thought justified the forced entry, Cobb testified that the officers thought (1) that a crime was occurring based on the strong odor of marijuana, and (2) that evidence was possibly being destroyed based on the sound of movement inside the apartment.

Cobb kicked the back left apartment door open, and officers performed an initial protective sweep looking for the original suspect. Though police did not find the suspected drug dealer, they found three people sitting on couches in the apartment: Jamela Washington, Clarence Johnson, and Appellant Hollis King. Johnson was smoking marijuana, while Washington and King sat nearby. Police found approximately 25 grams of marijuana and 4.6 ounces of powder cocaine in plain view. Upon further search, police found crack cocaine, scales with cocaine residue, $2500 in cash, three cell phones, and other drug paraphernalia. Police eventually entered the back right apartment, and found the suspected drug dealer who had been the original target.

King and his co-defendants argued that the police's entry into the apartment was unlawful, and filed motions to suppress all evidence obtained as a result of that entry. Following a suppression hearing, the circuit court issued extensive Findings of Fact, Conclusions of Law, and an Opinion and Order. As a preliminary matter, the circuit court concluded that King had standing to challenge the search.[2] Next, the court concluded that the smell of marijuana gave the officers probable cause to continue with their investigation. And finally, the court concluded that the lack of response to the knock on the door—coupled with the sound of movement, which the officers believed to be the destruction of evidence—created the requisite exigent circumstances to justify a warrantless entry. Therefore, the circuit court denied King's motion to suppress evidence.

King entered a conditional guilty plea, reserving the right to appeal the circuit court's denial of his motion to suppress. The circuit court found King guilty of trafficking in a controlled substance; possession of marijuana; and persistent felony offender, second degree (PFO II). For the trafficking charge, the court imposed a sentence of five years' imprisonment, enhanced to ten years by King's PFO status. For the possession charge, the court imposed a sentence of twelve months in jail.

On appeal, the Court of Appeals found fault with the circuit court's conclusions of law. The Court concluded that smelling burning marijuana, knocking on the door, and hearing movement within the residence cannot justify a warrantless entry. Rather, the Court of Appeals noted, such a search is invalid if the police created their own exigent circumstances. Nevertheless, the Court of Appeals concluded that, "under the circumstances of this case," police did not create their own exigency because they did not engage in deliberate and intentional conduct to evade the warrant requirement, citing *United States v. Chambers*, 395 F.3d 563, 566 (6th Cir.2005). The Court of Appeals also noted a "good faith" exception, and affirmed the circuit court's judgment.[3] This Court then granted discretionary review.

---

2. The record indicates that Jamela Washington leased the apartment, that Washington was King's girlfriend, and that King stayed at the apartment at least part of the time.

3. The Court of Appeals also affirmed the con-

## II. ANALYSIS

■ We apply a two-prong test when reviewing a trial court's ruling on a suppression motion following a hearing. *Stewart v. Commonwealth*, 44 S.W.3d 376, 380 (Ky.App.2000). First, the circuit court's factual findings are conclusive if supported by substantial evidence. *Id.;* RCr 9.78. However, we conduct "a *de novo* review to determine whether the court's decision is correct as a matter of law." *Stewart*, 44 S.W.3d at 380.

Upon review of the record, we conclude that the circuit court's findings of fact were supported by substantial evidence, and are therefore conclusive. We now conduct a *de novo* review of the law as applied to the circuit court's findings of fact.

### A. Police Did Not Have Proper Exigent Circumstances to Justify a Warrantless Entry

■ It is well established that, under the Fourth Amendment to the United States Constitution, police may not conduct a warrantless search or seizure within a private residence unless there exist both (1) probable cause and (2) exigent circumstances.[4] *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002); *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Any other search is *per se* unreasonable. *Id.* at 587, 100 S.Ct. 1371.

Both parties agree that the smell of burning marijuana created probable cause, which would have been sufficient for the police to obtain a warrant to search the back left apartment. Because the police chose not to seek a warrant, we must now address whether there existed exigent circumstances to justify the warrantless entry. The Commonwealth argues that two types of exigent circumstances justified the warrantless entry: (1) "hot pursuit," and (2) imminent destruction of evidence. We address each of these in the context of this case.

### 1. The Police Were Not In Hot Pursuit of a Fleeing Suspect

■ The "hot pursuit" of a fleeing suspect (when accompanied by probable cause as required by *Payton* ) is an exigent circumstance justifying the warrantless entry of a home. *United States v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Styles v. Commonwealth*, 507 S.W.2d 487, 488 (Ky.1974). *See also Minnesota v. Olson*, 495 U.S. 91, 100–01, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (reaffirming hot pursuit exception).

■ An important element of the hot pursuit exception is the suspect's knowledge that he is, in fact, being pursued. *Santana*, 427 U.S. at 43, 96 S.Ct. 2406; *see also State v. Nichols*, 225 Ga.App. 609, 484 S.E.2d 507, 508 (1997) ("Rather, the key to 'hot pursuit' is that the defendant is aware he is being pursued by the police, and is therefore likely to disappear or destroy evidence of his wrongdoing if the officer takes the time to get a warrant."). In this case, uniformed officers were in pursuit of the suspected drug dealer, but there is no evidence that he was aware of this. According to testimony at the suppression hearing, the suspect sold drugs to a confi-

---

viction of Jamela Washington, King's co-defendant, in *Washington v. Commonwealth*, 231 S.W.3d 762 (Ky.App.2007). Because *Washington* conflicts with our opinion in this case, it is hereby overruled.

4. Consent also authorizes a warrantless search, but consent is not an issue in this case.

dential informant, and then returned to his apartment.

Officer Cobb testified that police officers had hurried to the scene to prevent the suspect from entering an apartment. Although the suspect entered an apartment before he could be apprehended, there was no testimony that police feared he would escape. Nothing in these circumstances created an exigency that would have made it impracticable for the police to post officers in the breezeway and obtain a warrant. For these reasons, there was no hot pursuit justifying the warrantless entry of the back left apartment.

## 2. The Warrantless Entry Was Not Justified by the Imminent Destruction of Evidence

The imminent destruction of evidence is recognized as an exigent circumstance, which justifies a warrantless search when accompanied by probable cause. *Posey v. Commonwealth,* 185 S.W.3d 170, 173 (Ky.2006). *See also Roaden v. Kentucky,* 413 U.S. 496, 505, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973) ("Where there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime, it is reasonable to permit action without prior judicial evaluation.") (citations omitted).

As found by the circuit court, Officer Cobb gave two reasons for the decision to enter the left apartment without a warrant: the fact that a crime was occurring based on the odor of marijuana, and the possible destruction of evidence based on the sound of movement inside the apartment.

### a. The odor of marijuana did not create exigent circumstances

Odor alone is generally an insufficient basis for the warrantless search of a home based on imminent destruction of evidence. In *Johnson v. United States,* 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436 (1948), the Supreme Court held the warrantless search of a hotel room invalid where the officers detected "a strong odor of burning opium which to them was distinctive and unmistakable." *Id.* at 12, 68 S.Ct. 367. The Court stated that an odor, sufficiently distinctive to be recognized as an illegal substance, and detected by one qualified to recognize it, can be sufficient to justify the issuance of a warrant. *Id.* at 13, 68 S.Ct. 367. However, odor alone did not justify a warrantless search based on imminent destruction of evidence: "No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time will disappear. But they were not capable at any time of being reduced to possession for presentation to court." *Id.* at 15, 68 S.Ct. 367.

The odor of marijuana alone can justify the warrantless search of an *automobile. Cooper v. Commonwealth,* 577 S.W.2d 34, 37 (Ky.App.1979), *overruled on other grounds by Mash v. Commonwealth,* 769 S.W.2d 42 (Ky.1989). However, there is a strong distinction in Fourth Amendment jurisprudence between an automobile and a home. The mobility of an automobile creates an exigent circumstance *per se. Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (citing *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)). By contrast, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton,* 445 U.S. at 585, 100 S.Ct. 1371 (quoting *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)).

We also note that, in some circumstances, the odor of an illegal substance

alone will create exigent circumstances justifying a warrantless search. This is particularly true where public safety is a concern. *See, e.g., Bishop v. Commonwealth,* 237 S.W.3d 567 (Ky.App.2007) (strong chemical smell consistent with production of methamphetamine created exigent circumstances based on public safety due to inherent dangers in methamphetamine production). However, such circumstances are not present in this case.

**b. By knocking on the apartment door and announcing their presence, police created any resulting exigency**

The odor of marijuana emanating from the left apartment did not create an exigency based on destruction of evidence. Therefore, the sounds police heard after knocking on the door provide the only possible justification for entry based on imminent destruction of evidence. There is certainly some question as to whether the sound of persons moving was sufficient to establish that evidence was being destroyed. However, we assume for the purpose of argument that exigent circumstances existed, and proceed to the more important question of whether police created their own exigency.

■■■ We agree with the well established principle that police may not rely on an exigent circumstance of their own creation. *United States v. Chambers,* 395 F.3d 563, 566 (6th Cir.2005); *United States v. Duchi,* 906 F.2d 1278, 1284 (8th Cir. 1990); *see also United States v. Thompson,* 700 F.2d 944, 950 (5th Cir.1983) (citing cases so holding). But this general holding is rarely dispositive, because "in some sense the police always create the exigent circumstances that justify warrantless entries and arrests." *Duchi,* 906 F.2d at 1284. Kentucky courts have not firmly addressed under what circumstances police may not rely on an exigency of their own

creation. However, we draw guidance from other courts that have addressed the issue.

**1. The proper test for a police-created exigency**

In *United States v. Duchi,* the Eighth Circuit adopted an "antecedent inquiry," which focused on "the reasonableness and propriety of the investigative tactics that generated the exigency." 906 F.2d at 1284. The court went on to clarify that "bad faith is not required to run afoul of the standard we adopt and apply today." *Id.* The Third Circuit has used similar language, stating that "we must look to the reasonableness and propriety of [police] actions and investigative tactics *preceding* their warrantless entry." *United States v. Coles,* 437 F.3d 361, 370 (3d Cir.2006) (emphasis in original). Based on *Duchi* and other decisions of the Eighth Circuit, the Arkansas Supreme Court succinctly stated the proper test as being "[w]hether, regardless of good faith, it was reasonably foreseeable that the investigative tactics employed by the police would create the exigent circumstances relied upon to justify a warrantless entry." *Mann v. State,* 357 Ark. 159, 161 S.W.3d 826, 834 (2004).

The Fifth Circuit employs a two-part test: "first whether the officers deliberately created the exigent circumstances with the bad faith intent to avoid the warrant requirement, and second, even if they did not do so in bad faith, whether their actions creating the exigency were sufficiently unreasonable or improper as to preclude dispensation with the warrant requirement." *United States v. Gould,* 364 F.3d 578, 590 (5th Cir.2004).

The Sixth Circuit gives slightly more deference to law enforcement, requiring "*some showing* of deliberate conduct on the part of the police evincing an effort intentionally to evade the warrant require-

ment." *Chambers*, 395 F.3d at 566 (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 504 (6th Cir.2002)) (emphasis added in *Chambers*). However, the Sixth Circuit seems to stop short of restricting created-exigency cases to those where the police acted in bad faith. *See Chambers*, 395 F.3d at 569.

The Second Circuit appears to give the most deference to law enforcement, holding that "when law enforcement agents act in an entirely lawful manner, they do not impermissibly create exigent circumstances." *United States v. MacDonald*, 916 F.2d 766, 772 (2d Cir.1990) (en banc). "[T]he reasonableness of the police investigative tactics precipitating the exigency does not seem to figure into the Second Circuit's analysis." *Coles*, 437 F.3d at 369.

With the exception of the Second Circuit, these various approaches are similar, and will usually reach the same result. Even the Sixth Circuit's standard stops short of requiring bad faith on the part of police. In reviewing these approaches, we believe that a two-part test like that used by the Fifth Circuit, but including the language of the Arkansas Supreme Court, would provide the greatest clarity.

 Therefore, for Kentucky, we adopt a two-part test. First, courts must determine "whether the officers deliberately created the exigent circumstances with the bad faith intent to avoid the warrant requirement." *Gould*, 364 F.3d at 590. If so, then police cannot rely on the resulting exigency. Second, where police have not acted in bad faith, courts must determine "[w]hether, regardless of good faith, it was reasonably foreseeable that the investigative tactics employed by the police would create the exigent circumstances relied upon to justify a warrantless entry." *Mann*, 161 S.W.3d at 834. If so, then the exigent circumstances cannot justify the warrantless entry.

### 2. Application of the test

Turning to the facts of this case, it does not appear that the officers acted in bad faith. Though other officers were aware that the suspect had not entered the left apartment, Officer Cobb and the two narcotics detectives were not aware of this fact. Therefore, we cannot say that the officers acted deliberately with the bad faith intent to avoid the warrant requirement.

However, it was reasonably foreseeable that knocking on the apartment door and announcing "police," *after* having smelled marijuana emanating from the apartment, would create the exigent circumstance relied upon, i.e. destruction of evidence. It was reasonably foreseeable that, upon hearing police announce their presence, the persons inside the apartment would proceed to destroy evidence of their crime. Before police announced their presence, there would have been no reason to destroy evidence of either the marijuana which the officers had smelled, or evidence of the original drug transaction.

 When the imminent destruction of evidence is a concern because a suspect has become aware of police presence, the primary distinction is the manner by which the suspect gained that knowledge. Where police are observing a suspect from a lawful vantage point, and the suspect sees police, then the exigency is generally not police-created. But where police unnecessarily announce their presence, and this creates the fear that evidence will be destroyed, police have created their own exigency, and cannot rely on the fear of evidence being destroyed as a justification for a warrantless entry. *See United States v. Munoz–Guerra*, 788 F.2d 295, 298 (5th Cir.1986) (agents created their own exigency by knocking on patio door after seeing marijuana in plain view through a window, where premises could have been covertly secured and warrant

could have been obtained prior to approaching the patio); *see also United States v. Richard,* 994 F.2d 244, 249 (5th Cir.1993) (agents created exigent circumstances by announcing presence).

The odor of marijuana did not create an exigency based on imminent destruction of evidence. In addition, any exigency that did arise when police knocked and announced their presence was police-created, and cannot be relied upon as a justification for a warrantless entry.

## B. The "Good Faith" Exception Does Not Apply to a Warrantless Entry

■ Finally, the Commonwealth argues, consistent with the Court of Appeals' opinion, that although Officer Cobb was mistaken about the suspected drug dealer being in the left apartment, the "good faith" exception prevents the warrantless entry from being invalidated due to his mistake. This argument is without merit.

■ We assume the Court of Appeals was referring to the good faith exception to the exclusionary rule established by *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). However, the *Leon* good faith exception is "clearly limited to warrants invalidated for lack of probable cause" and does not create a broad good faith exception for any illegal search. *United States v. Whiting,* 781 F.2d 692, 698 (9th Cir.1986). *See also United States v. Morgan,* 743 F.2d 1158,

1165 (6th Cir.1984) (refusing to extend the good faith exception to a warrantless search that the government argued was justified by exigent circumstances).[5]

## III. CONCLUSION

While probable cause existed for police to obtain a warrant to enter the apartment occupied by King, police did not have proper exigent circumstances to justify a warrantless entry. Police were not in hot pursuit of a fleeing suspect. Further, the entry was not justified by imminent destruction of evidence. The odor of marijuana alone did not provide a justification, and any exigency arising from the sounds of movement inside the apartment was created by police, and therefore cannot be relied upon as a justification.

For the foregoing reasons, the judgment of the Court of Appeals is reversed. The denial of King's motion to suppress evidence is reversed, and King's judgment of conviction is vacated. The case is hereby remanded to Fayette Circuit Court for proceedings consistent with this opinion.

All sitting. MINTON, C.J.; ABRAMSON, NOBLE, SCOTT, and VENTERS, JJ., concur. CUNNINGHAM, J., concurs in result only without separate opinion.

■

5. The Commonwealth's and the Court of Appeals' reliance on *Perkins v. Commonwealth,* 237 S.W.3d 215 (Ky.App.2007), is misplaced. The issue in *Perkins* was whether a search was consensual, and the *Perkins* court quoted *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990): "The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reason-

ably (though erroneously) believe they are in pursuit of a violent felon who is about to escape." *Perkins,* 237 S.W.3d at 219 (quoting *Rodriguez,* 497 U.S. at 186, 110 S.Ct. 2793). To support the quoted language, *Rodriguez* cites *Archibald v. Mosel,* 677 F.2d 5 (1st Cir. 1982), which stands only for the proposition that, *when a warrantless entry is justified by exigent circumstances,* the entry in pursuit of a felon is not invalid simply because the police do not find the felon in the premises. In the case at bar, however, the warrantless entry was not justified by exigent circumstances.