*473 Justice Ginsburg,
dissenting.
The Court today arms the police with a way routinely to dishonor the Fourth Amendment’s warrant requirement in drug cases. In lieu of presenting their evidence to a neutral magistrate, police officers may now knock, listen, then break the door down, never mind that they had ample time to obtain a warrant. I dissent from the Court’s reduction of the Fourth Amendment’s force.
The Fourth Amendment guarantees to the people “[t]he right... to be secure in their ... houses . .. against unreasonable searches and seizures.” Warrants to search, the Amendment further instructs, shall issue only upon a showing of “probable cause” to believe criminal activity is afoot. These complementary provisions are designed to ensure that police will seek the authorization of a neutral magistrate before undertaking a search or seizure. Exceptions to the warrant requirement, this Court has explained, must be “few in number and carefully delineated,” if the main rule is to remain hardy. United States v. United States Dist. Court for Eastern Dist. of Mich., 407 U. S. 297, 318 (1972); see Kyllo v. United States, 533 U. S. 27, 31 (2001).
This case involves a principal exception to the warrant requirement, the exception applicable in “exigent circumstances.” See ante, at 460. “[CJarefully delineated,” the exception should govern only in genuine emergency situations. Circumstances qualify as “exigent” when there is an imminent risk of death or serious injury, or danger that evidence will be immediately destroyed, or that a suspect will escape. Brigham City v. Stuart, 547 U. S. 398, 403 (2006). The question presented: May police, who could pause to gain the approval of a neutral magistrate, dispense with the need to get a warrant by themselves creating exigent circumstances? I would answer no, as did the Kentucky Supreme Court. The urgency must exist, I would rule, when the police come on the scene, not subsequent to their arrival, prompted by their own conduct.
*474 I
Two pillars of our Fourth Amendment jurisprudence should have controlled the Court’s ruling: First, “whenever practical, [the police must] obtain advance judicial approval of searches and seizures through the warrant procedure,” Terry v. Ohio, 392 U. S. 1, 20 (1968); second, unwarranted “searches and seizures inside a home” bear heightened scrutiny, Payton v. New York, 445 U. S. 573, 586 (1980). The warrant requirement, Justice Jackson observed, ranks among the “fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law.” Johnson v. United States, 333 U. S. 10, 17 (1948). The Court has accordingly declared warrantless searches, in the main, “per se unreasonable.” Mincey v. Arizona, 437 U. S. 385, 390 (1978); see also Groh v. Ramirez, 540 U. S. 551, 559 (2004). “[T]he police bear a heavy burden,” the Court has cautioned, “when attempting to demonstrate an urgent need that might justify warrantless searches.” Welsh v. Wisconsin, 466 U. S. 740, 749-750 (1984).
That heavy burden has not been carried here. There was little risk that drug-related evidence would have been destroyed had the police delayed the search pending a magistrate’s authorization. As the Court recognizes, “[p]ersons in possession of valuable drugs are unlikely to destroy them unless they fear discovery by the police.” Ante, at 461. Nothing in the record shows that, prior to the knock at the apartment door, the occupants were apprehensive about police proximity.
In no quarter does the Fourth Amendment apply with greater force than in our homes, our most private space which, for centuries, has been regarded as “ ‘entitled to special protection.’” Georgia v. Randolph, 547 U. S. 103, 115, and n. 4 (2006); Minnesota v. Carter, 525 U. S. 83, 99 (1998) (Kennedy, J., concurring). Home intrusions, the Court has said, are indeed “the chief evil against which ... the Fourth *475 Amendment is directed.” Payton, 445 U. S., at 585 (internal quotation marks omitted); see Silverman v. United States, 365 U. S. 505, 511 (1961) (“At [the Fourth Amendment’s] very core stands the right of a man. to retreat to his own home and there be free from unreasonable governmental intrusion.”). “ ‘[Searches and seizures inside a home without a warrant are [therefore] presumptively unreasonable.’” Brigham City, 547 U. S., at 403 (quoting Groh, 540 U. S., at 559). How “secure” do our homes remain if police, armed with no warrant, can pound on doors at will and, on hearing sounds indicative of things moving, forcibly enter and search for evidence of unlawful activity?
II
As above noted, to justify the police activity in this case, Kentucky invoked the once-guarded exception for emergencies “in which the delay necessary to obtain a warrant. . . threaten^] ‘the destruction of evidence.’” Schmerber v. California, 384 U. S. 757, 770 (1966) (quoting Preston v. United States, 376 U. S. 364, 367 (1964)). To fit within this exception, “police action literally must be [taken] ‘now or never’ to preserve the evidence of the crime.” Roaden v. Kentucky, 413 U. S. 496, 505 (1973).
The existence of a genuine emergency depends not only on the state of necessity at the time of the warrantless search; it depends, first and foremost, on “actions taken by the police preceding the warrantless search.” United States v. Coles, 437 F. 3d 361, 367 (CA3 2006). See also United States v. Chambers, 395 F. 3d 563, 565 (CA6 2005) (“[O]fficers must seek a warrant based on probable cause when they believe in advance they will find contraband or evidence of a crime.”). “[W]asting a clear opportunity to obtain a warrant,” therefore, “disentitles the officer from relying on subsequent exigent circumstances.” S. Saltzburg & D. Capra, American Criminal Procedure 376 (8th ed. 2007).
Under an appropriately reined-in “emergency” or “exigent circumstances” exception, the result in this case should not *476 be in doubt. The target of the investigation’s entry into the building, and the smell of marijuana seeping under the apartment door into the hallway, the Kentucky Supreme Court rightly determined, gave the police “probable cause . .. sufficient ... to obtain a warrant to search the .. . apartment.” 302 S. W. 3d 649, 653 (2010). As that court observed, nothing made it impracticable for the police to post officers on the premises while proceeding to obtain a warrant authorizing their entry. Id., at 654. Before this Court, Kentucky does not urge otherwise. See Brief for Petitioner 35, n. 13 (asserting “[i]t should be of no importance whether police could have obtained a warrant”).
In Johnson, the Court confronted this scenario: standing outside a hotel room, the police smelled burning opium and heard “some shuffling or noise” coming from the room. 333 U. S., at 12 (internal quotation marks omitted). Could the police enter the room without a warrant? The Court answered no. Explaining why, the Court said:
“The right of officers to thrust themselves into a home is ... a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman ....
“If the officers in this ease were excused from the constitutional duty of presenting their evidence to a magistrate, it is difficult to think of [any] case in which [a warrant] should be required.” Id., at 14-15.
I agree, and would not allow an expedient knock to override the warrant requirement.* Instead, I would accord that *477 core requirement of the Fourth Amendment full respect. When possible, “a warrant must generally be secured,” the Court acknowledges. Ante, at 459. There is every reason to conclude that securing a warrant was entirely feasible in this case, and no reason to contract the Fourth Amendment’s dominion.

The Court in Johnson was informed that “when [the officer] knocked on [Johnson’s] door the ‘first thing that naturally struck [her]’ was to conceal the opium and the equipment for smoking it.” See Brief for United *477 States in Johnson v. United States, O. T. 1947, No. 329, p. 17, n. 6. Had the Government in Johnson urged that the “shuffling or noise” indicated evidence was at risk, would the result have changed? Justice Jackson’s recognition of the primacy of the warrant requirement suggests not. But see ante, at 469, n. 5 (distinguishing Johnson on the ground that the Government did not contend “that the officers entered the room in order to prevent the destruction of evidence”).